NOLEN & THOMPSON *vs.* THE HEIRS OF GWYN.

1. Where there is no subscribing witness to a lost deed, a sufficient predicate being laid to let in secondary evidence, its contents may be proved by any one who has read it and knows what it contains.

2. Where a subsequent purchaser insists that, as against a prior grantee, whose deed has not been recorded, he is a *bona fide* purchaser without notice, it is incumbent on him to prove the payment of a valuable consideration: The recitals in his deed are not evidence thereof.

3. Upon the approval by the President of a contract, made by an Indian reservee under the Creek Treaty of 1832, for the sale of his land, the title of the purchaser relates back to the date of the contract, and inures to his intermediate vendee, whether by quitclaim or warranty deed.

Error to the Circuit Court of Macon. Tried before the Hon. Geo. W. Stone.

This was an action of trespass to try titles, brought by the plaintiffs against Isham Gwyn in his life time, and after his death, revived against his heirs at law. The bill of exceptions contains a copy of the patent for the land in controversey to William H. Simmons and George W. Thompson, dated the 12th January 1841, which recites that they purchased the land in 1834, from an Indian reservee under the Creek treaty of 1832, and that the contract of purchase was approved by the President on the 11th January 1841. The plaintiffs rested their title before the jury upon the patent and a deed from said Simmons to Nolen, dated the 21st May 1842. The defendants introduced as a witness one Hope, who testified that in 1839, he saw in the possession of one Connell, a deed, which he read enough of to know that it was a deed, but he was not asked, nor did he state whether there was or was not a subscribing witness to it. The witness was asked by the

counsel of the plaintiffs if he knew who wrote the deed, and answering in the negative, he was farther asked if he had not said that it was in the hand writing of one Barclay, to which he replied that he may have said so, as he was once under that impression. Barclay was subsequently introduced by the plaintiffs solely to impeach the credit of Hope, and testified that Hope did say to him that he Barclay wrote the deed and that one Jolly was a subscribing witness to it. The bill of exceptions recites that the defendants having laid a sufficient predicate to let in secondary evidence, offered to prove the contents of this deed by said Hope, to which the plaintiffs objected on the ground that Jolly was not produced, which objection the court overruled, and the witness stated that the deed was dated in 1839, and was from Simmons to Connell for the land in controversey. The defendants then offered in evidence and read to the jury a judgment against Connell, founded on a forfeited injunction bond, an execution issued thereon, and the sheriff's deed for the land, by virtue of a sale under said judgment and execution, to said Gwyn—all bearing date in 1842, after the purchase of the said Nolen, and proved the possession in Connell to within a short time before the date of the deed from Simmons to Nolen, at which time Simmons was in possession. Upon this evidence the plaintiffs asked a charge of the court, which was refused and which will be found copied in the opinion of the court. To the ruling of the court and its refusal to charge as requested, the plaintiffs excepted and now assign them as error.

S. Williams, McLester and Cocke, for pl'ffs.

Rice, Belser & Harris, for defendants.

DARGAN, C. J.—It is not necessary to determine whether an injunction bond, after the dissolution of the injunction, creates a lien on the lands of the obligors or not, for it is clear that after a levy and sale by an execution issued on the bond in the manner prescribed by the act, the title passes to the purchaser. It follows, therefore, that Gwyn by his purchase acquired such title as Connell had; he stands in the stead and shoes of Connell, and if the plaintiffs are entitled to recover as against Connell, they are equally entitled to recover against

Gwyn. This view renders it unnecessary to examine some of the questions argued at the bar, and leaves but three upon which we think it is necessary to express an opinion. 1st. Did the court err in permitting parol proof of the contents of the deed from Simmons to Connell? The proof does not show that there was a subscribing witness to the deed. It is true, that Barclay testified that Hope, by whom the contents of the deed from Simmons to Connell were proved, stated to him that one Jolly was a witness to the deed, but it must be borne in mind that Barclay was introduced for the sole purpose of impeaching the credibility of Hope, and had never seen the deed, nor did he know whether there was a subscribing witness to it or not. The testimony of Barclay, though legal for the purpose for which it was introduced, did not prove or even tend to prove, that the deed was attested by a subscribing witness. The bill of exceptions affirms that a sufficient predicate was laid to let in secondary evidence of the contents of the deed, and there was no proof that there was a subscribing witness to it. Any person, therefore, who had seen and read the deed and who knew its contents, was competent to testify as to what it conveyed.

2. The testimony tended to show that Simmons one of the patentees was in possession of the land at the time he conveyed to Nolen, and there was no evidence that Nolen had notice of the deed from Simmons to Connell, nor has the deed to Connell ever been recorded. The plaintiffs requested the court to charge the jury, that if they believed that Simmons executed a deed for the land in the year 1839, to Connell, who took possession and occupied it five or six years, and then left the possession, that afterwards, Simmons, the grantor, went into possession, and whilst so in possession, exercising acts of ownership over it, he sold it to Nolen, then Nolen was an innocent purchaser without notice, and must be protected; this charge was refused, and the plaintiffs excepted. As the deed to Connell has never been recorded, of course it must be void as against a subsequent *bona fide* purchaser, this is expressly declared by our statute. The whole question then is, whether Nolen is a *bona fide* purchaser—if he is, he is entitled to recover, not only as against Connell, the first vendee from Simmons, but also against any one else who claims

through Connell; for if the deed to Connell be void because it has not been recorded, no one can have a title, who claims through it as against a *bona fide* purchaser. When one insists that he is a *bona fide* purchaser without notice, it is incumbent on him to prove two facts: 1st—a conveyance of the land to him, and secondly, that he has paid a valuable consideration for it. If he fails to establish either of these, he has failed to show that he is a *bona fide* purchaser.—Jewell v. Palmer & May, 7 Johns. Ch. Rep. 65, and cases there cited. This is the invariable rule in equity, and it cannot be contended that a different rule prevails at law. There was no proof whatever that Nolen had paid the purchase money specified in the deed to him, except the recitals in the deed. Are such recitals evidence against Connell, or those who claim under him? The rule we think is without exception, that the declarations or admissions of a vendor or assignor, made after the sale or assignment, are not evidence to defeat his vendee or assignee. A contrary rule would enable a vendor or assignor, after he had parted with all his interest, to defeat the title of his own purchaser. Now, the recitals in the deed from Simmons to Nolen, acknowledging the payment of the purchase money from Nolen, can be considered in no other light. Simmons had parted with all his interest in the land by his deed to Connell, and he therefore could make no admissions that would be binding on Connell or those who claim under him. In the case of Doe on the demise of McGintry et al. v. Reese, 10 Ala. 137, the precise question here presented was raised. The plaintiff in that case claimed through a mortgage—the defendant through a sheriff's deed. The judgment under which he derived title was junior to the mortgage, but the debt on which the judgment was rendered was older. There was no evidence of the consideration of the mortgage, except the recitals in the mortgage deed. This court held that they were not evidence of a consideration, but must be considered as the declarations or admissions of a stranger. If the admissions of the mortgagor contained in his deed cannot be received as evidence to defeat a creditor, whose debt was not in judgment, when they were made, and who in fact was the owner of the land when the mortgage was executed, surely the ad-

mission of the vendor, after he has parted with all interest in the land, cannot be received to defeat his own deed.

3. But it is contended that the charge should have been given for the reason that the patent to Simmons and Thompson bears date in 1841, and the deed from Simmons to Connell in 1839; and as there was no evidence to show that this deed contained a covenant of warranty, the legal presumption was, that it was a mere quitclaim deed, and if so, the title derived by the patent did not pass to Connell, as Simmons had none at the time it was executed. It is but reasonable to suppose that this question was not presented to the court below, for the charge asked is not the most appropriate that could have been requested to elicit the opinion of the court on the question. We, however, will consider the question as if raised by a direct and appropriate request. The recitals in the patent show, that Simmons and Thompson are purchasers from an Indian reservee, under the treaty of 1832 with the Creek Indians; their contract of purchase was made with the Indian in the year 1834, but was not ratified and approved by the President until 1841. If we admit that Thompson and Simmons had no title until their contract was approved of by the President, and that until then it was void, still we are clearly of the opinion, that as soon as it was approved of by the President, it had relation back to the date of the contract with the Indian reservee. At the time of their contract, if they had no title, yet they had a contract capable of confirmation, and when confirmed, their title would relate back to the time of their purchase from the Indian. If this be correct, then the deed to Connell, whether with warranty, or whether it was a mere quitclaim, would pass such title to him as was conveyed to Simmons by the patent. After a deliberate examination of the question, I am satisfied, contrary to my first impression, that there is no error in the record, and the judgment must be affirmed.

CHILTON, J., not sitting, having been of counsel before his election to the Bench.