(122 So. 330)

## WITTMEIR v. LEONARD et al.
### (6 Div. 220.)

Supreme Court of Alabama. May 9, 1929.

Arthur L. Brown, of Birmingham, for appellant.

Huey & Welch and W. G. Stone, all of Bessemer, for appellees.

THOMAS, J. The bill by appellant sought foreclosure, and relief was denied on grounds to be considered.

Appellant, in March, 1907, became and thereafter was the owner of the property made the subject of the mortgage sought to be foreclosed, having improved and erected a building thereon, sold to Leonard who executed a mortgage of date of July 3, 1913, for $850 for the recited security of and as "being (the) balance of the purchase money," and said instrument was filed for record on August 10, 1916, and duly recorded in the probate office in the county where the land was situated. Said mortgagor remained in possession until October 22, 1914, when he sold to W. C. Bailey, subject to said mortgage or vendor's lien, conveying by warranty deed containing the following:

"The State of Alabama, Jefferson County.

"Know all men by these presents, That for and in consideration of Two Hundred Fifty ($250.00) Dollars and indebtedness due J. S. Wittmeir to the undersigned Grantor A. T. Leonard and wife, Alice Leonard in hand paid by W. C. Bailey, the receipt whereof is hereby acknowledged, we do grant, bargain, sell and convey unto the said W. C. Bailey," etc.

The respondents, of whom was Bailey, admitted in their pleading the debt recited to complainant, J. S. Wittmeir, saying: "These respondents admit that the recited consideration in the last named deed was $250.00 and the indebtedness due J. S. Wittmeir;" yet deny that it was "made to appear from said deed that said Wittmeir had any lien on the property in question, nor is the nature of the indebtedness then due complainant in any manner disclosed;" and aver that "the recital in said deed is not sufficient to put these respondents on notice, either actual or constructive that the indebtedness due complainant was evidenced by the notes and mortgage sought to be foreclosed in this action." Hence these issues of controverted fact are presented for decision.

It is clearly shown that, when Leonard sold to Bailey, the latter was informed of the existence, amount, and nature of complainant's claim and lien; that he acquiesced therein, and paid some portion of the purchase money or lien notes to Wittmeir through his agent, the First National Bank, where the mortgage and notes were left for collection and transmission of proceeds to complainant. These facts are admitted by Bailey's evidence. When Bailey and wife sold and conveyed to M. M. Massey, the recited consideration was $1,250. "Massey was to assume the indebtedness to Dr. Wittmeir (complainant)—the indebtedness that I (Bailey) assumed from Mr. Leonard and that was still unpaid; and for the balance I (Bailey) taken a mule rated at $200.00." The witness Bailey stated the items of that consideration: "The $1,250.00 consideration expressed in the deed of myself and wife to M. M. Massey consisted of a $200.00 note of Massey to me, secured by a mortgage on the property involved in this suit, a mule which we put in the trade at $200.00; two hogs aggregating $50.00; a check for $87.50, and the notes of A. T. Leonard to J. S. Wittmeir plus the interest then due on said notes, and the balance in cash sufficient to make up $1,250.00." This witness further said that, before Massey bought this property, he was informed by the grantor that there was a mortgage on it from Leonard to Wittmeir, which witness "had assumed;" that he informed purchaser that "Leonard had told me (witness) of this mortgage. I (witness) had paid some of these notes, * * * at the First National Bank;" that said purchaser verified with him these liens at the bank "before we closed the trade," and they had the cashier "to figure the accumulated interest" on said indebtedness to Wittmeir. The deed from Bailey and wife to M. M. Massey is of date of February 4, 1916, and filed for record March 30, 1916.

A note and mortgage filed for record of date of February 15, 1916, from Massey and wife for $200, payable November 1, 1916, recited that it "is further understood that this mortgage is given to secure the balance of the purchase price of said property herein conveyed." And it bore the further indorsement: "For and in consideration of the sum of

$200.00 in hand paid to me by W. D. Bush, I, W. C. Bailey, do hereby grant, bargain, sell and convey and assign all my right, title, interest and claim in and to the within mortgage and the indebtedness secured to the said W. D. Bush. This September 9, 1916. W. C. Bailey." And this "transfer" was filed for record September 18, 1916, and the mortgage bore the record date of February 15, 1916. It will also be noted that the mortgage from A. T. Leonard to appellant, J. S. Wittmeir, was duly filed for record in said probate office on the subsequent date' of August 10, 1916. The delay in record is fully explained by the retention of the mortgage for collection in Birmingham by Wittmeir's attorney, who was instructed to have the mortgage recorded, and failed to so do, and, when the oversight was noted after the death of that attorney, the same was duly recorded on August 10, 1916, about a month before the mortgage from Massey to Bailey was transferred by W. C. Bailey to respondent W. D. Bush. Bailey further testified of this transaction as follows:

"Dr. Wittmeir told me that he had a mortgage on the property. I said, 'Do you know that mortgage is not' on record?' I don't remember what he said, but I told him it didn't make any difference whether he had one or not as long as I kept the place, that I intended to pay it anyway. * * *

"When I traded with Massey I told him that there was a mortgage on the property. * * *

" * * * at the time this trade was made we were in the First National Bank in Bessemer. I had started to the bank for the purpose of borrowing money on the Massey mortgage. I met Mr. Bush on the street or near or in the bank. Mr. Bush told me he would take the mortgage, and I think $190.00 was the consideration. I signed the transfer on both the note and mortgage. I do not recall whether or not I delivered to him the title certificate marked 'Respondent's Exhibit D' when I sold the note and mortgage to Mr. Bush; but I had procured the title certificate for the purpose of getting money on the note and mortgage. * * *

"I looked at the deed that Leonard gave me. The indebtedness from Leonard to Wittmeir was mentioned in the deed.

"Q. As a part of the consideration? (Respondent objects, because the deed speaks for itself.) A. It was mentioned in the deed."

Bailey does not testify that he gave Bush notice of Wittmeir's mortgage; Bush denies that he had such knowledge and said that Bailey gave him a certificate of title, had the mortgage transferred; and on his redirect examination testified that he must have "given him the whole thing," and at this time there was due to Dr. Wittmeir 56 notes (we interpolate $10) "on the Leonard mortgage" to Wittmeir. The account of this transaction by Bush is as follows:

"I sold W. C. Bailey a house and nine or eleven lots, and at the time I bought one lot from him. The occasion of my buying the note and mortgage marked respondent's Exhibit 'C' was that Bailey told me he wanted to get some money from the First National Bank of Bessemer, and said he was not very well acquainted with Mr. Lewis, the President of the Bank, and asked me to go down there with him. I do not recall where we were when this conversation took place, but suppose it was at my house,—that is my best recollection. I asked him how much he wanted, and he said he wanted about two hundred dollars, and said he had a mortgage he wanted to sell them, or discount it. I told him I would meet him there at the bank next morning. I did meet him at the bank the next morning. He handed me the mortgage and certificate of title. * * *

"I told him Yes, we could get the money on that. I told him I would let him have the money on it. I let him have the money right there. The note and mortgage were transferred to me there at that time and place. The date that appears on the transfer on the mortgage and the note, September 9th, 1916, is the date of the transfer of those papers to me.

"Before I purchased the note and mortgage I read the certificate of title. I had been familiar with the land all my life. * * *

"This note and mortgage of Massey to Bailey was never paid to me. I had the mortgage foreclosed."

This transfer of the Massey mortgage was on September 9, 1916, recorded September 18, 1916, after the prior record of the mortgage from Leonard to Wittmeir on August 10, 1916. A few years thereafter W. D. Bush, said transferee, deeded the property to F. J. Davis on September 26, 1919 (recorded December 3, 1919), reciting a consideration of $1,500, and secured by mortgage of date of October 14, 1919, and recorded on that date. This was foreclosed by W. D. Bush and conveyed to John Bush, and there was a *quitclaim* deed by said Davis and wife to W. D. Bush of April 9, 1926; and *quitclaim* deed from John Bush to W. D. Bush of date of October 24, 1923, filed for record November 7, 1923. Respondent W. D. Bush denied that he knew of Dr. Wittmeir's mortgage when he bought the note and mortgage from Massey to Bailey; said the property was worth $2,200 to $2,500; that he bought the property "under my (his) alleged foreclosure for $239.48 under the (his) mortgage from Massey to Bailey, which was transferred for me." That witness further said:

"At the time I bought the Massey mortgage in 1916, I did not go to see the house. I didn't go see the house until after I foreclosed it, and then the front porch was down, and there was not any paper on it. At that time I guess the house was worth three or four hundred dollars. At that time the house

could have been built new for $800.00 or $1,-000.00. * * *

"I bought the note and mortgage in good faith. I paid for it the morning I bought it,—it was all one transaction. W. C. Bailey carried the certificate of title down there to show to the bank, and when I saw it I said 'that's all right, I'll take that myself.' * * *

"I said that this has always been an unlucky house to get anything out of. * * *

"When I said there was a damper on the title, I meant this law suit."

The foregoing shows the transfer of the mortgage at the time the record showed the Leonard mortgage to Wittmeir, Bush's transfer to Davis, the foreclosure of the latter's mortgage, the purchase by John Bush, the quitclaims of the latter to respondent W. D. Bush in 1923, 1926, respective; the sale of the lands for taxes as assessed to December 29, 1924, and that W. D. Bush received a tax deed on his redemption thereof. The deposition of said Bush shows Veazey is in possession under contract to pay said Bush $2,700 for the premises, in the event of favorable termination of this litigation—to respondent Bush.

The policy of insurance of date of November 30, 1908, and the certificate of title for the benefit of "W.. C. Bailey only," shed no light upon the equities and priorities of lien and title now for decision.

■ It results from the foregoing and the authorities having application that the trial court erred in holding that the recitals in the recorded deed from Leonard to Bailey were insufficient to incite inquiry of subsequent vendees, grantees, or mortgagees, as to the rights of J. S. Wittmeir. See 5 Thompson on Real Property, § 4201, p. 251; section 4226, p. 292, for general authorities. In this jurisdiction the rule is, whatever is sufficient to put one on his guard and call for inquiry is notice of everything to which due inquiry would lead. Gamble v. Black Warrior Coal Co., 172 Ala. 669, 673, 55 So. 190; Pepper v. George, 51 Ala. 195; Cole v. Birmingham Union R. Co., 143 Ala. 427, 39 So. 403; Veitch v. Woodward Iron Co., 200 Ala. 358, 76 So. 124; Alexander v. Fountain, 195 Ala. 3, 70 So. 669; Copeland v. Warren, 214 Ala. 150, 107 So. 94; Henley v. Masonic Temple Ass'n, 208 Ala. 371, 94 So. 300; Street v. Treadwell, 203 Ala. 68, 82 So. 28; Evans v. Bryan, 202 Ala. 484, 80 So. 868; Ivy v. Hood, 202 Ala. 121, 79 So. 587; Carroll Merc. Co. v. Harrell, 199 Ala. 87, 74 So. 252; Winters v. Powell, 180 Ala. 426, 61 So. 96; Taylor v. Agricultural & Mechanical Ass'n of West Alabama, 68 Ala. 229; Corbitt v. Clenny, 52 Ala. 480; Burch v. Carter, 44 Ala. 115. That is to say, the purchaser is chargeable with notice of that which appears on the face of conveyances in the chain of his title, but he is not bound to inquire into collateral circumstances. Attorney Gen. v. Blackhouse, 17 Vesey, 282. One who has knowledge of

facts sufficient to put him on inquiry as to the existence of an unrecorded mortgage is not a purchaser without notice under registration statutes. Gamble v. Black Warrior Coal Co., supra: In construing conveyances, "each word is presumed to have been used for some purpose, and deemed to have some force and effect." Allumns v. Allumns, 208 Ala. 369, 94 So. 296; Chattahoochie & Gulf R. Co. v. Pilcher, 163 Ala. 401, 51 So. 11. See, also, Head v. Hunnicutt, 172 Ala. 48, 55 So. 161.

■ The court erred in holding that W. D. Bush was not chargeable with constructive notice of Dr. Wittmeir's prior lien, by reason of the record of the mortgage of Leonard to Wittmeir, which was duly placed upon record prior to the date of the assignment by Bailey to Bush of the mortgage of Massey, under the foreclosure and quitclaims, under which Bush claims superiority to Wittmeir. Code, §§ 6887, 6860; Brower v. Witmeyer et al., 121 Ind. 83, 22 N. E. 975; Hook v. First Nat. Bank of Reform, 206 Ala. 321, 324, 89 So. 466; Albertville Trading Co. v. Brooks, 22 Ala. App. 147, 113 So. 473. The mortgage of Leonard to Wittmeir was *filed for record on* August 10, 1916; and the Massey mortgage to Bailey was *transferred on the 9th day of September, 1916*, and on February 3, 1917, W. D. Bush, as transferee or assignee of the Massey mortgage, executed to himself a foreclosure deed to the property. In Dulin v. Hunter, 98 Ala. 539, 542, 13 So. 301, 302, the observation is made: "We conceive these cases to have established in this State the rule, that defenses and equities existing between a mortgagee and third persons will not affect the rights of an assignee of the mortgage, unless he had notice thereof at the time of the assignment, and that an assignee for value of a subsequent mortgage, without actual notice of a prior unrecorded mortgage, is not prejudiced by the fact that his assignor, the mortgagee, took with notice of the first mortgage."

Here the Wittmeir mortgage was of record when the Massey mortgage was purchased, transferred, and assigned to Bush. There was error in the holding that Bush was a bona fide purchaser for value without notice. The conveyance or transfer of the note and mortgage from Massey to Bailey, and by him to Bush, before due date of the note, freed the same of defenses by Massey. It did not affect the rights of appellant Wittmeir, whose mortgage was of record at the date of said transfer and assignment. This is aside from the fact of the record of the vendor's lien in the deed from Leonard to Bailey. The appellant's rights and equities had been protected and made secure by the actual knowledge of its existence by Bailey and Massey, and thereafter by the records of the mortgage from Leonard to Wittmeir, and the conveyance from Leonard to Bailey. Bush could not be a bona fide purchaser without

notice, with the Leonard to Wittmeir mortgage of record. Code, § 6887. It was within the excepting clause of the statute, "unless the same have been recorded before the accrual of the right of such purchasers, mortgagees, or judgment creditors." *Bona fide purchasers without notice* are defined by the decisions: Nolen v. Heirs of Gwyn, 16 Ala. 725; Betts v. Ward, 196 Ala. 248, 257; 72 So. 110; Rucker v. Tennessee Coal, Iron & R. Co., 176 Ala. 456, 58 So. 465; Ballard v. Bank of Roanoke, 187 Ala. 335, 65 So. 356; Lake v. Hancock, 38 Fla. 53, 20 So. 811, 56 Am. St. Rep. 159.

It is true, the certificate of title by Wittmeir and wife was issued to A. T. Leonard on July 23, 1913, and the date of his deed was of July 3, 1913. The subsequent actual knowledge of the fact of lien, and that of the notice imputed under the statute by the due record of the mortgage, raised no question of bad faith or laches of which Bush can avail as against the payment of the original vendor's lien to Wittmeir. A casual inspection of the certificate of title of date in 1913 should stimulate to a further investigation of the facts and records on September 9, 1916, the date of Bailey's transfer to Bush. The fact that the Massey mortgage was filed for record on February 15, 1916, before the Leonard mortgage recorded August 10, 1916, is not available to Bush, who purchased the Massey mortgage September 9, 1916, after the record of the mortgage by Leonard to Wittmeir.

The decree is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and FOSTER, JJ., concur.