175 So. 281

## PHŒNIX MUT. LIFE INS. CO. v. LEWIS.

### 4 Div. 946.

Supreme Court of Alabama.

May 20, 1937.

Rehearing Denied June 28, 1937.

G. A. Ward, of Geneva, for appellant.

E. C. Boswell, of Geneva, for appellee.

PER CURIAM.

The majority of the Justices, consisting of ANDERSON, C. J., GARDNER, BOULDIN, BROWN, and FOSTER, JJ., are of the opinion that the most complainant is entitled to is the possession, control, rents, incomes, and profits of the land during her life; and to that end the decree of the circuit court is reversed and one here rendered, impressing a trust upon the property for the use of the complainant, Mrs. M. A. Lewis, giving her the right to the possession, control, and use of the property, and the incomes, rents, and profits therefrom during her natural life, she to pay the taxes assessed against said property during that period. At her death, the fee-simple title will vest in the mortgagee, the Phœnix Mutual Life Insurance Company.

Costs are taxed against the appellee.

Reversed and rendered.

All the Justices concur, except THOMAS, J., dissenting.

KNIGHT, J., not sitting.

THOMAS, Justice (dissenting).

This is the second appeal in this case. It was held that the complainant's bill made a case which justified equitable relief by cancellation of conveyance. Lewis v. Owen et al., 231 Ala. 480, 165 So. 229.

After the reversal and remandment pursuant to the judgment here, the Phœnix Mutual Life Insurance Company filed answer and cross-bill to the bill as amended. Testimony was taken before the register, with due submission thereon, and the final decree granted complainant relief as prayed. The appeal is from that decree.

The evidence shows that Mrs. M. A. Lewis was an old woman, who conveyed her home to Mrs. L. V. Owen and husband, her daughter and son-in-law, who lived with grantor for several years before and at the time of this conditional conveyance. After the conveyance complainant looked after these lands. When the entire evidence is considered, the difference as to possession of the land before and after the conveyance to the daughter and son-in-

law was that the latter was not required to pay rent.

It may be further said of the evidence that appellee complainant had the mother with her who drew a pension, and, after her death, complainant received a share of the mother's property and the same was consumed in support of herself and family.

Mrs. M. A. Lewis could not read writing, could sign her name, and had not been about Geneva or other places away from home, until this litigation was begun.

It is shown that complainant did not know of the mortgage in question, did not give her consent thereto, and when informed of its existence went with a friend to Geneva and employed counsel to procure cancellation of said mortgage.

It is further shown that from 1931 to the filing of the bill on August 31, 1933, she bought her clothing and helped to buy foodstuff for the place; that the Phœnix Mutual Life Insurance Company nor any other person had in any way interrupted her possession and occupancy of the lands, nor molested her in having repairs done on these lands and buildings thereupon.

The cross-examination of complainant as a witness was to the effect that, after the deed was made, she turned the farm over to the Owens "to run"; that they arranged to make the crop; that they lived together in the same house; that improvements were made on the farm, houses, and fences. The situation was stated as follows:

"Q. All the crops that were made there on this place was made by Mr. and Mrs. Owen? A. Yes, sir.

"Q. Did you ever make complaint to them that they wasn't furnishing you with a living? A. No sir, for I knew they knew we didn't have a good living.

"Q. Isn't it a fact that they did furnish you as good a living as they had, since you have been living together, and since you made this deed? A. We all eat at the same table of course, but I tell you it was a scanty living.

"Q. You haven't wanted for any of the necessities of life? A. Yes sir.

"Q. Have they wanted for them too? A. Yes sir.

"Q. You said in your direct examination that you had a good living up until about 1931, did you? A. Tolerable good living.

"Q. Practically as good as you ever had? A. Yes sir, I reckon so, but I never had such a good living in my life.

"Q. You all still live together in that house on the place? A. Yes sir, we live right there.

"Q. And they have been taking care of you since 1931, haven't they? A. What time I wasn't taking care of them.

"Q. I will ask you Mrs. Lewis, you say that after you made this deed in 1908, you turned this land, this farm, over to them to run, did you, or did the grantees in this deed, M. E. Owen and L. V. Owen, your daughter and son-in-law, pay the taxes on this land, who paid the taxes after 1908? A. I helped to pay them."

Witness further testified that she had no other children than Mrs. Owen and no living husband; that she did not know whether the rent on the land would be sufficient to give her a good living or what kind of living it would produce; that she, her mother, and daughter made a good living on that farm without mortgaging the same; that it was never mortgaged by her or with her consent.

On cross-examination, Mrs. Lewis further stated as to cultivatable land that two small patches were cleared since the deed was made, that her brothers made such clearing and that her son-in-law cleared a portion of the land for cultivation after the deed was made; that she and her daughter helped in clearing the land, cutting saplings. This is further illustrated in recross-examination, as follows:

"Q. Mrs. Lewis, after you made this deed to your daughter and son-in-law in 1908, was there any land cleared on that tract of land? A. Two little patches.

"Q. Do you know who cleared that land? A. Mother's boys, my brothers.

"Q. Your brothers cleared the land after you had made the deed to Mr. and Mrs. Owen? A. No sir, they cleared the land before that.

"Q. After you made a deed, the land was yours, and after you made this deed in 1908 to Mr. and Mrs. Owen, has there been any land cleared on that tract of land since 1908, since the deed you made to your daughter and son-in-law? A. No sir, I don't think there has.—He cleared some land.

"Q. About how many acres did he clear? A. I couldn't tell you.

"Q. Pretty good field? A. Yes sir.

"Q. You had nothing to do with that clearing? A. Yes sir, I did, me and my

daughter cut saplings to help clear the land."

The testimony of complainant is corroborated by Mr. and Mrs. Owen, by M. L. Peters, J. N. Johnston, and J. E. Straighter. The substance of the testimony is that Mrs. Lewis had general supervision over the place and farm, was domiciled thereon at all times, and that the place was generally known and understood in the community as her place; that she continued to exercise supervision over the whole premises, including the rental of cultivatable lands, repairs of building and fences, and such clearing of land as was done.

It is conceded that she made no complaint to the Owens of their failure to provide a living for her, giving as her reason for failure of complaint that "they knew she was not being properly taken care of"; and that she provided all of her clothing and much of the food consumed after the year 1931.

When all the evidence is considered, it does not justify the reasonable conclusion that these lands were held adversely to appellee complainant. The evidence of Owen's assessing same for taxes is explained by Mrs. Lewis—that she was old and trusted her daughter and son-in-law, inquiring after and helping in the payment of the taxes that was looked after by Mr. Owen. The circumstance of the listing of the same for taxes by Owen, in his own name, will not overcome the other evidence as to Mrs. Lewis' possession and exercising acts of ownership, to which we have adverted.

The argument made that complainant is old and in the course of events the property will descend to Mrs. Owen does not warrant the insistence that there should be a conditional cancellation for the life of complainant. She owned the land, has the right of conveyance or devise, and owes no further duty to protect her daughter and her husband, who have sought to imperil her holding.

The evidence, as we have indicated, shows the continuous possession of the land under claim of right with her grantees; that she had no knowledge of her grantees' mortgage; that the covenant in her deed was breached in 1931; that there was a failure to take care of her to the time of foreclosure of appellant's mortgage; that such mortgagee was chargeable with knowledge of the covenant (Planter's Warehouse & Comm. Co. v. Barnes et al., 229 Ala. 572, 159 So. 63; First National Bank of Eutaw v. Barnes et al., 229 Ala. 612, 159 So. 68; Wittmeir v. Leonard et al., 219 Ala. 314, 122 So. 330; Sherrod v. Hollywood Hold. Corporation, 233 Ala. 557, 173 So. 33), and made no effort to support and maintain complainant. Such respondent, complainant in cross-bill, may not complain of a court of equity, on establishment of such breached covenant, decreeing cancellation.

I, therefore, respectfully dissent.