Union Oil Company (Union) appeals from the grant of a summary judgment for plaintiffs, Colglazier, et al., and the denial of its own motion for summary judgment, in a declaratory judgment action in which plaintiffs were found to own an undivided one-half interest in and to all the oil, gas and minerals in a tract of land in Mobile County, free and clear of an oil, gas and mineral lease held by the defendant, Union. We affirm.
Plaintiffs are grantees of Conservation Land Company (Conservation), which originally owned both the surface and minerals of the land in question, the Northwest Quarter of Section 12, Township 2 South, Range 2 West, Mobile County, Alabama. Conservation conveyed this land to one C.C. Huxford, "excepting, however, all oil, gas and minerals in and under said lands." This deed was recorded. Huxford then conveyed the land to one G.C. Coggin Company, Inc., stating that all oil, gas and mineral rights to this tract and to some other parcels conveyed in the same instrument "are excepted, these rights having been reserved in previous conveyances." This deed is also of record. Coggin Company conveyed the land back to Conservation along with several other parcels, subject to the following reservation:
 "The grantor expressly reserves to itself, and unto its successors and assigns, an undivided one-half interest in whatever interest it now owns in the oil, gas and minerals lying in, under or upon said lands."
It is undisputed that Coggin Company never owned any mineral rights in the land in question. This deed also was recorded.
Following the conveyance from Coggin Company, Conservation once again owned both the surface and the minerals of the subject parcel. It then conveyed this land and several other tracts to Celeste Land Company (Celeste), a new corporation with *Page 967 
the same shareholders as Conservation. This deed, the interpretation of which is the subject of this suit, is a "statutory warranty deed" conveying the land "subject to all of the easements, reservations and restrictive covenants, if any, lawfully existing with respect thereto." This deed was also recorded. Included in the description of the land conveyed was this provision: "All of Section Twelve (12), except the Southwest Quarter (SW 1/4), and except as hereinafter expressly set forth." Following the description of the tracts conveyed was this language:
 "2. There are expressly excepted from the real property described under Paragraph 1 hereinabove the following:
* * * * * *
 (c) An undivided one-half (1/2) interest in and to the oil, gas and minerals lying in, under or upon the Northwest Quarter (NW 1/4) of Section Twelve (12), Township Two South, Range Two West (T2S, R2W), same having been reserved to G.C. Coggin Company, Inc., in the certain deed dated December 22, 1950, recorded in Deed Book 520, page 86, of said Probate Records. . . ."
The question to be decided is whether through this deed Celeste obtained title to all of the oil, gas and minerals or whether title to an undivided one-half interest remained in Conservation.
Plaintiffs claim title through subsequent conveyances from Conservation, each claiming to own a certain fractional part of the undivided one-half mineral interest. They brought a declaratory judgment action, alleging that Union claimed that the entire mineral interest was under lease to it by virtue of an oil, gas and mineral lease executed by Celeste, purporting to cover all of the mineral interest without exception or reservation. Both plaintiffs and Union moved for summary judgment. The court granted plaintiffs' motion and denied Union's, holding that the deed from Conservation to Celeste conveyed only an undivided one-half interest in the oil, gas and minerals and that the plaintiffs owned their fractional interests free and clear of Union's lease. Union appealed.
The significant language in the Conservation-to-Celeste deed is "same having been reserved to G.C. Coggin Company, Inc."
Union's position is that this phrase made the conveyance subject to a mineral interest erroneously thought to be in a third party who had no such interest, and that this erroneous reference did not withhold the mineral interest from the conveyance as a matter of law.
Plaintiffs contend that there was a clear exception[1] from the conveyance of an undivided one-half interest in the minerals and that the quoted language is merely a recital of an erroneous reason for the exception which does not avoid the effect of the exception. The trial court was correct in finding for the plaintiffs.
The basic objective in construing the terms of a deed is to ascertain the intention of the parties, especially the grantor, and if that intention can be found from the entire instrument, arbitrary rules of construction need not be used. FinancialInvestment Corp. v. Tukabatchee Area Council, Inc.,353 So.2d 1389, 1391 (Ala. 1977).
A starting point is provided by § 35-4-2 (Code 1975), which states as follows:
 "Every estate in lands is to be taken as a fee simple, although the words necessary to create an estate of inheritance are not used, unless it clearly appears that a less estate was intended."
Upon consideration of the entire deed, when it clearly appears that the grantor intended to reserve or except mineral rights, the reservation or exception will be good, even though the granting or habendum clause contains words of inheritance.Holmes v. Compton, 273 Ala. 554, 142 So.2d 697 (1962). *Page 968 
We find that the deed in question, taken as a whole, is not ambiguous and clearly expresses an intention to except from the grant an undivided one-half interest in the oil, gas and minerals. The clause referring to the prior reservation is merely an erroneous recitation of fact, and does not operate to void the exception or pass the entire fee interest.
Our conclusion finds support in cases from other jurisdictions involving similar situations. In Wilson v.Gerard, 213 Miss. 177, 56 So.2d 471 (1952), the grantor conveyed certain tracts by warranty deed "[s]ubject to one-half interest in mineral and oil rights as conveyed to Wm. Henderson." In fact, there was no prior conveyance and no such person as "Wm. Henderson." Title to the one-half mineral interest remained in the grantor, and the grantee was deemed to own only what he was purchasing — all the land and one-half of the minerals.
In Oldham v. Fortner, 221 Miss. 732, 74 So.2d 824 (1954), the grantor conveyed land "except all minerals and mineral rights, heretofore sold and conveyed." This was held to be a valid exception of all of the mineral rights, whether or not the prior conveyance of mineral rights was valid.
In Pich v. Lankford, 157 Tex. 335, 302 S.W.2d 645 (1957), the Texas Supreme Court construed two deeds, the first containing the following language after the description of the land: "Save and Except an undivided three-fourths of the oil, gas and other minerals in, on and under said land, which have been heretofore reserved." The second deed contained this language following the description of the land conveyed: "Save and Except an undivided three-fourths of the oil, gas and other minerals in and under the Southwest Quarter thereof, . . . which minerals do not belong to the grantors herein." In fact, only a one-half and a one-fourth royalty interest had been previously reserved. The Court held that the deeds excepted an undivided three-fourths interest in the minerals in plain and unambiguous language. The quoted clauses were mere recitals telling why the exceptions were made. The chain of title showed the recitals to be false, but the giving of a false reason for an exception was held not to operate to convey the excepted interest to the grantee. Id. at 340, 302 S.W.2d at 648.
Defendant Union cites cases from several other jurisdictions which reach different conclusions as to what the parties intended by the use of exceptions or reservations referring to prior conveyances. We do not consider these cases to be controlling, and although extended discussion of the facts and conclusions of each case is unnecessary, we will comment upon the main arguments made by Union.
First, Union points out that some courts have held that these clauses are intended to protect the grantor on his warranties, not to exclude the mineral interest from the grant, citingUnited States v. McKenzie County, 187 F. Supp. 470 (D.N.D. 1960), aff'd sub nom. Murray v. United States, 291 F.2d 161
(8th Cir. 1961). This Court has used the warranty-protection approach in a case involving bonuses and royalties. Martin v.Knight, 290 Ala. 171, 275 So.2d 117 (1973). We found that a reservation made "with the same provisions" used in a prior deed was intended to protect a warranty rather than reserve anything to the grantor. This is not the situation here. In this case the deed contains a clear exception which stands on its own and does not incorporate by reference any prior exception or reservation.
The deed in question is a statutory warranty deed, and it is suggested by plaintiffs that there are no warranties present which would be protected by the disputed clause. This is denied by Union. We do not reach this issue and we express no opinion as to what effect, if any, the presence or absence of warranties, express or implied, would have on the interpretation of other deeds. Our conclusion here is based on the consideration of the language used in the deed, not on the fact that it is a statutory warranty deed.
Next, Union contends that under the common law and under Alabama statutes it *Page 969 
is presumed that the deed conveyed a fee simple, absent an expressed reservation to the grantor himself. Union argues that the deed did not contain specific language reserving an interest in Conservation, so that the full mineral interest must have passed to Celeste.
Section 35-4-2 of the Alabama Code of 1975, quoted above, does not require any magic words in order to convey less than a full interest in land. Moreover, a valid exception operates to remove something from the grant, whether the interest is vested in the grantor or in another. Pich v. Lankford, supra,157 Tex. at 342, 302 S.W.2d at 650.
Union's third argument is that the deed is ambiguous and that ambiguous clauses in deeds must be construed in favor of grantees and against grantors. We have previously stated our conclusion that the deed is not ambiguous and clearly excepts an undivided one-half of the mineral interest. However, Union raises the point that the deed on its face leaves no interest in Conservation, so that plaintiffs were forced to introduce an extrinsic chain of title to establish their interests in the property. It is contended that introduction of this chain of title created an ambiguity which must be resolved in favor of the grantee, Celeste.
The fact that plaintiffs, in order to establish their interests, introduced a chain of title which proved that a statement in the Conservation-to-Celeste deed was false did not create an ambiguity in the deed itself. Either the deed was ambiguous or it was not. The question is whether the deed from Conservation to Celeste conveyed one-half of the mineral rights or all of the mineral rights. The trial court correctly found that there was a clear exception of one-half of the oil, gas and minerals. This issue is not affected by the truth or falsity of the disputed clause, since it was merely an erroneous reason for or description of the exception and could not operate to enlarge or diminish the exception. Pich v.Lankford, supra.
Union argues further that the deed does not except a one-half mineral interest, but rather excepts the same interest which G.C. Coggin Company reserved. This is not what the deed says. It excepts in plain language an undivided one-half mineral interest, then proceeds to purport to add a description or reason, albeit erroneous.
The final contention made by Union is that, due to the close relationship of the parties to the Conservation-to-Celeste deed, the plaintiffs are estopped from contending that the deed conveyed less than the full mineral interest. Union asserts that Celeste represented that it owned the full mineral interest and leased the full mineral interest to Union. At that time, the stockholders in Celeste were also the stockholders in either Conservation or South Alabama Pulpwood, one of the plaintiffs. It is Union's position that Celeste, Conservation, and all those claiming under them are estopped from denying that Celeste did not own the full mineral interest.
Union is not in a position to invoke an estoppel on this point. A party who seeks to assert an estoppel must have beenignorant of the truth at the time of the conduct amounting to the representation and at the time when that conduct was acted upon. Jacksonville Public Service Corp. v. Calhoun Water Co.,219 Ala. 616, 123 So. 79 (1929). If he could have ascertained the facts by reasonable diligence, but failed to do so, he may not assert an estoppel since he did not justifiably rely upon the other's representations. Pattillo v. Tucker, 216 Ala. 572,113 So. 1 (1927).
It is not clear whether Union checked the chain of title to the land in question or not. An examination of the public records by Union would have disclosed the recorded deeds through which Celeste claimed title and would have given Union actual notice that there were, at least, serious questions as to whether Celeste owned a full mineral interest. Even if Union had not checked the record, it has constructive notice of the contents of the recorded deeds. § 35-4-63 (Code 1975). A purchaser is chargeable with notice of what appears on the face of conveyances in his *Page 970 
chain of title. Wittmeir v. Leonard, 219 Ala. 314, 122 So. 330
(1929).
For the foregoing reasons, this cause is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
[1] In modern usage, the terms "reservation" and "exception" are often used interchangeably without regard to their technical common law meanings. See Webb v. Jones, 163 Ala. 637,50 So. 887 (1909). The parties have not argued this distinction. This opinion follows the wording of the deeds in question and the terms as used by the parties.