[1] This case reached this Court with the style "James Bookout Cantley, et al. v. The River Gas Corporation, et al.," but we have restyled it to reflect the true parties in interest.
This appeal presents a question of construction of a mineral reservation in a 1929 deed. The trial court held that by that deed the grantor reserved all minerals; the heirs of the grantee appeal. *Page 1080 
In 1924, the United States granted a land patent to George Hallman, reserving "to the United States all coal in lands so patented, and to it, or persons authorized by it, the right to prospect for, mine and remove coal from the same upon compliance with the conditions of and subject to the limitations of the Act of June 22, 1910 (36 Stat. 583)." On October 10, 1925, George Hallman conveyed the property to T.J. Hubbard, excepting from this conveyance "all coal in the lands above described and the right to prospect for, mine and remove coal from the same, as the coal is owned by the United States Government." On March 13, 1929, T.J. Hubbard conveyed the property by warranty deed to C.R. Bookout.[2] The deed to Bookout states: "All mineral reserved to the United States."
Pursuant to Rule 22, Ala.R.Civ.P., The River Gas Corporation brought an interpleader action to resolve competing claims to production royalties from three methane gas wells operated by River Gas in the Blue Creek Coal Degasification Field in Tuscaloosa County, Alabama.[3] The accrued royalties were deposited with the trial court pending resolution of the action. The interpleader complaint named as defendants two family groups, the heirs of C.R. Bookout (hereinafter "Bookout heirs")[4] and the heirs of T.J. Hubbard (hereinafter "Hubbard heirs").[5] Each family bases its claim on the 1929 warranty deed from Hubbard to Bookout.
The Bookout heirs moved for a summary judgment, claiming a superior right to the production royalties based on the 1929 warranty deed, which, they argued, conveyed full title to all mineral rights, excluding only the coal originally reserved to the United States. The Hubbard heirs thereafter moved for a summary judgment, arguing that the 1929 warranty deed reserved from the conveyance to Bookout all mineral rights and that all such rights not actually reserved by the United States remained with Hubbard, the grantor. The trial court entered a summary judgment in favor of the Hubbard heirs, holding that the Hubbard heirs were the owners of all accrued and future production royalties from the gas wells in question.
This Court has decided similar questions in Union Oil Co. ofCalifornia v. Colglazier, 360 So.2d 965 (Ala. 1978); Turner v.Lassiter, 484 So.2d 378 (Ala. 1985); and Howell Petroleum Corp.v. Holliman, 504 So.2d 277 (Ala. 1987).
In Colglazier, the Court construed a deed providing:
 "2. There are expressly excepted from the real property described under Paragraph 1 hereinabove the following
". . . .
 "(c) An undivided one-half (1/2) interest in and to the oil and, gas and minerals, lying in, under or upon, [description of the property], same having been reserved to G.C. Coggin Company, Inc., in the certain deed dated December 22, 1950, recorded in Deed Book 520, page 86, of said Probate Records. . . ."
360 So.2d at 967. It was undisputed, however, that the G.C. Coggin Company had never owned any of the mineral rights that it attempted to reserve for itself in the December 22, 1950, deed. 360 So.2d at 966. The question, therefore, was whether the undivided one-half interest, recited to have been reserved in an earlier deed, remained with the grantor or passed to the grantee. 360 So.2d at 967. The Court held that notwithstanding the erroneous reference to the attempted reservation in the prior deed, the deed reserved from the grant an undivided one-half *Page 1081 
interest in the oil, gas, and minerals. 360 So.2d at 968. The language referring to the prior ineffective reservation was held to be a mere erroneous recitation of fact that did not operate to void the reservation. Colglazier, 360 So.2d at 968. See 1 Williams Myers, Oil and Gas Law § 310.1 n. 8, at 580.13 (1991); 26 C.J.S. Deeds § 140(1), at 1010 (1956).
The Bookout heirs' principal argument is, in effect, that the prior deeds in the chain of title excepting "all coal" as owned by the United States create an ambiguity. InColglazier, the Court addressed a similar argument by stating:
 "Union raises the point that the deed on its face leaves no interest in Conservation [grantor], so that plaintiffs were forced to introduce an extrinsic chain of title to establish their interests in the property. It is contended that introduction of this chain of title created an ambiguity which must be resolved in favor of the grantee, Celeste.
 "The fact that plaintiffs, in order to establish their interests, introduced a chain of title which proved that a statement in the Conservation-to-Celeste deed was false did not create an ambiguity in the deed itself. Either the deed was ambiguous or it was not. The question is whether the deed from Conservation to Celeste conveyed one-half of the mineral rights or all of the mineral rights. The trial court correctly found that there was a clear exception of one-half of the oil, gas and minerals. This issue is not affected by the truth or falsity of the disputed clause, since it was merely an erroneous reason for or description of the exception and could not operate to enlarge or diminish the exception. Pich v. Lankford, [157 Tex. 335, 302 S.W.2d 645
(1957)]."
360 So.2d at 965. Just as the reference to the prior deeds that was necessary to ascertain the grantor's interest inColglazier did not create an ambiguity, a reference to the prior reservation of coal similarly does not create an ambiguity here.
In Howell Petroleum v. Holliman, supra, the deed in question stated: "It is understood that the mineral rights are excepted." 504 So.2d at 277. Only coal had previously been reserved — in the original patent, just as in this case. The opinion is not exactly clear on the point, but it appears that the question was whether the quoted language was merely a reference to the prior reservation of coal or a new reservation of minerals by the grantor. The opinion quotes language fromColglazier and Sanford v. Alabama Power Co., 256 Ala. 280,54 So.2d 562 (1951), to the effect that erroneous references to prior reservations did not prevent an effective reservation in the deed in question. Holliman can also be understood by reference to the distinction between exceptions and reservations:
 "Typically, although not necessarily, an exception is used to withhold from the conveyance an interest already severed (and usually held by someone other than the grantor). . . . In contrast, a reservation typically severs an interest different in kind from the fee conveyed."
Earle v. International Paper Co., 429 So.2d 989, 992
(Ala. 1983). Thus, it can be seen that the grantees in Holliman
argued in effect that the language in question was merely anexception of the coal interest previously reserved by the United States, not a reservation by the grantor of all other minerals. The Court held the language sufficient to effect a reservation. Similarly, in this case, the Bookouts argue, in effect, that the provision is an exception of the prior coal reservation, not a reservation by Hubbard of all other minerals. Just as in Holliman, the language here effectively reserves all minerals to Hubbard rather than simply excepting the coal previously reserved by the United States.
In Turner v. Lassiter, supra, this Court construed the following language in a deed from Lassiter to Turner:
 " 'LESS AND EXCEPT all oil, gas and minerals, one-half of which have been reserved by prior owners and one-half of which the undersigned expressly reserves unto himself, his heirs and assigns.' "
Id., 484 So.2d at 379. When Lassiter executed this deed, it was questionable whether one-half of the rights to the oil, gas, and minerals had actually been reserved by prior *Page 1082 
owners. The Court held the language of the exception to be unambiguous:
 " 'LESS AND EXCEPT ALL oil, gas and minerals.' Under the facts of this case: 'All' is all. 'All' is not ambiguous. 'All' is not vague. 'All' is not of doubtful meaning."
Id., 484 So.2d at 380. Turner argued that the erroneous recitation of fact concerning reservations by prior owners created an ambiguity and that, therefore, the granting clause, which contained words of inheritance without exception or reservation, should govern. This Court responded:
 "We conclude that the deed in the case at issue was not ambiguous and clearly excepted all oil, gas, and minerals. The phrase 'one-half of which have been reserved by prior owners' is merely a recitation of fact, which may or may not have been erroneous, and it does not make the deed ambiguous. The deed from Lassiter to the Turners clearly excepted all oil, gas and minerals."
Id., 484 So.2d at 380-81.
In this case, the language "All mineral reserved" clearly reserves all mineral rights from the conveyance to Bookout. The phrase "to the United States" is merely an erroneous recitation of the prior reservation. Therefore, the summary judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., dissents.
[2] We express no opinion as to the possible effect of other conveyances in the chain of title, as no such issue has been raised by either party.
[3] Cf. Vines v. McKenzie Methane Corp., 619 So.2d 1305
(Ala. 1993), which held that a lease of coal and other minerals included coalbed methane gas. The parties did not raise this question below or on appeal. We address this appeal only as it is framed by the parties, and we make no judgment as to possible interests held by any other parties.
[4] The Bookout heirs, the appellants in this case, include James Bookout Cantley, Gertrude B. Pruitt, Clarence C. Bookout, Charles R. Owen, James W. Owen, Foster G. Owen, Sarah B. Morris, Maria J. Bradley, Harriet O. Smith, Nancy N. Tullos, and Jonathan M. Bookout.
[5] The Hubbard heirs, who are the appellees, include Howell Hubbard, Jessie Hubbard Green, Hazel Hubbard Dickey, Sue Hubbard Williams, Margaret Hubbard Xanders, Alma Hubbard, and Betty Hubbard Bryant.