# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

JOHN T. VICKERS et al.,

Plaintiffs-Appellees,

v.

CAPSTONE HOLDING et al.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case Nos. 24 JE 0023, 24 JE 0025**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 23CV00013

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Sara E. Fanning,* RoetzeL & Andress, LPA, for John T. Vickers et al. and *Atty. Joshua E. O'Farrell*, Buckingham, Doolittle &, Burroughs, LLC, for Angelo L. DiLuzio, for Plaintiffs-Appellees,

*Atty. John Kevin West, Atty. John C. Ferrell,* Steptoe & Johnson PLLC, for  Defendant Gulfport Appalachia, LLC and *Atty. Erik A. Schramm Sr., Atty. Erik A. Schramm Jr., Atty. Kyle W. Bickford,* Hanlon, McCormick, Schramm, Bickford & Schramm Co., LPA for Defendant Capstone Holding Company*.

Dated:  September 4, 2025

------

**Robb, P.J.**

{¶1} Defendants-Appellants Capstone Holding Company and Gulfport Appalachia, LLC appeal the judgment of the Jefferson County Common Pleas Court entered in favor of Plaintiffs-Appellees John and Gail Vickers and Angelo DiLuzio regarding the minerals underlying their property. The initial issues on appeal deal with a 1995 deed in which Capstone's predecessor in title transferred the property to Appellees.

{¶2} First, Appellants argue the deed's release clause is so broad that it bars an action to have that same deed interpreted or enforced. However, we reject this argument and conclude Appellees' action based on deed interpretation and enforcement was not barred by the release clause contained in the same deed transferring the property to them.

{¶3} Second, Appellants argue the deed plainly created a new reservation of all oil and gas to the grantor by "excepting and reserving all coal, oil, gas and other minerals, mining rights and other rights and privileges heretofore conveyed" (even though there were no prior reservations of oil and gas, only coal). They claim the phrase "heretofore conveyed" was a mere irrelevant "false recital" while emphasizing a "subject to" clause already served to give notice of prior encumbrances. Appellant Capstone adds an alternative argument alleging if the language is ambiguous on whether the parties intended to create a new mineral reservation for the deed grantor, then the extrinsic evidence should be viewed as showing the grantor intended to transfer only the surface to Appellees. However, the plain language of the deed and its "heretofore conveyed" clause shows it excepted from transaction only minerals that were previously transferred and did not create a new reservation of all minerals to the grantor (who was Capstone's predecessor in title).

{¶4} Lastly, Appellant Gulfport argues against the award of prejudgment interest on the royalties it withheld. We reject Gulfport's argument that withheld royalties were not actually "due and payable" under the prejudgment interest statute. The clause in Appellees' lease allowing Gulfport to "withhold payments that would otherwise be due and payable" until adverse title claims were fully resolved did not eliminate the statutory right to interest on the withheld amounts.

{¶5} For the following reasons, Appellants' arguments lack merit, and the trial court's judgment is affirmed.

Case Nos. 24 JE 0023, 24 JE 0025

STATEMENT OF THE CASE

{¶6}   In 1992, R & F Coal Company purchased the subject 67.262 acres of property in Jefferson County from Seaway Coal Company with no oil and gas reservation. The prior chain of title contained certain coal reservations but no prior encumbrance of the oil and gas or other minerals.

{¶7}   In October 1995, Rich Pilney signed an auction purchase contract to purchase the property.  Specifics were added to the form contract.  In the blank space after "It is further agreed by both parties that," the following terms were added:  "all parcels being sold by the acre, and subject to easements, restrictions, and conditions of record and excepting any previously conveyed coal and mineral rights."

{¶8}   In the resulting December 1995 limited warranty deed, R & F Coal Company conveyed the property to Appellee John Vickers, Appellee Angelo DiLuzio, and Rich Pilney.  (Vol. 182, P. 805).  Pilney conveyed his interest to DiLuzio in 2001.

{¶9}   This 1995 deed said it was "UNDER AND SUBJECT to any and all exceptions, reservations, restrictions, easements, rights of way, highways, estates, covenants and conditions apparent on the record or shown by instruments of record."

{¶10}  The next sentence read, "EXCEPTING AND RESERVING all coal, oil, gas and other minerals, mining rights and other rights and privileges heretofore conveyed."

{¶11}  The deed discussed prior mining operations and included a waiver of any claims for damages due to those activities or related subsidence.  The next sentence had the grantees acknowledge they inspected the property and concluded by stating the grantees released R & F Coal Company (and successors and assigns) from any and all liability or actions, present or future, arising in connection with the property.

{¶12}  In 1999, R & F Coal Company merged into R & F Coal, LLC, which then merged into Appellant Capstone Holding Company.  In 2007, Capstone leased the oil and gas under multiple holdings; the subject property was included in the leased acreage. (Capstone Lease); (2007 Memorandum of Lease and 2008 Addendum, recorded 3/9/09).[1]

---

[1] The 2007 Capstone Lease was signed by Capstone's President John P. Dutton, who was also a witness to the 1995 deed from R & F Coal Company to Vicker, DiLuzio, and their former co-tenant (the latter of whom signed the auction purchase contract provided by Dutton Auction and Realty Co.).  Dutton's affidavit said he was the senior landman at R & F Coal Company at the time of the 1995 deed.

{¶13} The rights of the lessee under the Capstone Lease were assigned multiple times over the years. In the summer of 2018, Gulfport acquired the lessee rights under the Capstone Lease for certain depths (600 feet above to 200 feet below "the top of the Trenton Limestone Formation").[2]

{¶14} Months prior to this (in the spring of 2018), Gulfport entered oil and gas leases with Appellees regarding the same property. (Vickers Lease; DiLuzio Lease). Gulfport thereafter pooled the property and formed two units (in 2020 and 2021). Gulfport withheld royalties from Appellees under the Vickers Lease and the DiLuzio Lease due to the Capstone Lease and Capstone's claim of ownership of the oil and gas despite the 1995 deed from its predecessor in title to Appellees.

{¶15} In 2023, Appellees John and Gail Vickers filed a complaint against Capstone and Gulfport. Appellee Angelo DiLuzio was originally named as a defendant, but the trial court realigned him as a plaintiff upon joint request. (6/15/23 J.E.). Appellees asked the court to declare the 1995 deed they received from R & F Coal Company did not reserve any oil and gas (or other never-before-encumbered minerals), the 2007 Capstone Lease was null and void as to the oil and gas under the subject property, and Appellees' 2018 leases with Gulfport were the only oil and gas leases encumbering the property. Correspondingly, they sought quiet title to the oil, gas, and other minerals underlying the property and to any claims related to the Capstone Lease adverse to their interest. Lastly, they asserted a breach of contract claim against Gulfport and sought an accounting and payment of the royalties owed for the oil and gas produced from the property plus interest.

{¶16} Appellants filed Civ.R. 12(B)(6) motions to dismiss claiming the plain language of the deed showed R & F Coal Company retained all oil and gas under the excepting and reserving clause and/or showed Appellee released this type of future claim. The trial court denied the motions to dismiss. (6/15/23 J.E.).

{¶17} In subsequently answering the complaint, Appellants filed counterclaims seeking quiet title and declarations that R & F Coal Company reserved all oil and gas

---

[2] The party assigning those rights to Gulfport under the Capstone Lease, Ascent Resources–Utica, LLC, was originally named a defendant in this action but was dismissed from the case by stipulation after disclaiming any interest in the Capstone Lease as related to the subject property.

through the 1995 deed, the deed contained a release of all future claims including this one, and the Capstone Lease was valid.

{¶18} Each Appellant thereafter filed a motion for summary judgment, arguing the action was barred by the 1995 deed's release clause and the deed clearly reserved the oil and gas in any event. Appellant Capstone's motion additionally argued if the deed's excepting and reserving clause was ambiguous, then the extrinsic evidence showed an intent to transfer only the surface to Appellees.

{¶19} Appellees filed a competing summary judgment motion on these title issues and also sought summary judgment on the amount of royalties withheld by Gulfport with interest. On the latter topic, Gulfport argued the lease allowed the withholding of certain costs that were not deducted from Appellees' calculation.

{¶20} The court granted partial summary judgment to Appellees on the title issues (in a strongly worded opinion calling Appellants' arguments "far-fetched and ridiculous"). In rejecting Appellants' contention that the 1995 deed reserved the oil and gas to the grantor, the court concluded the excepting and reserving clause plainly applied to only those interests previously conveyed, emphasizing the words "heretofore conveyed." In rejecting Appellants' argument on the action being barred by the deed's release clause, the court said the clause clearly did not release R & F Coal Company and successors or assigns from future conduct, such as the conduct of leasing the oil and gas (in the 2007 Capstone Lease). (8/20/24 J.E.).[3]

{¶21} Thereafter, a bench trial was held on the issue of damages owed by Appellant Gulfport to Appellees under the Vickers Lease and the DiLuzio Lease. Adopting the landowners' position on the royalty calculation, the trial court found the lease language clear ("gross at the wellhead without costs" where "gross" was specifically defined in the lease) and the court noted it "indulged" the parties by allowing extrinsic evidence to be presented at trial on the cost issue. In addition to ordering Gulfport to pay Appellees future royalties without deductions for costs, the court ordered Gulfport to pay Appellees $862,556.32 in accrued unpaid royalties from the start of production through August 1, 2024, imposing both prejudgment and postjudgment interest at the statutory rate.

---

[3] In discussing a statute of limitations issue, the court pointed out 21 years for adverse possession had not passed since Capstone leased the oil and gas underlying Appellees' property. Referring to an oral argument about 21 years passing since the 1995 deed, the trial court pointed out this was a deed enforcement not a deed reformation action. (8/20/24 J.E.).

(10/22/24 J.E.) (also adopting Appellant's proposed findings of fact and conclusions of law).

**{¶22}** Gulfport and Capstone each filed a notice of appeal. The cases were consolidated. Capstone's brief sets forth one assignment of error challenging the summary judgment by presenting three issues about the 1995 deed (plain language of the release, plain language of the excepting and reserving clause, and extrinsic evidence on intent to create a present reservation of oil and gas). Gulfport sets forth two assignments of error, the first contains the two plain language arguments and the second challenges the award of prejudgment interest.

<u>DEED LANGUAGE</u>

**{¶23}** Gulfport's first assignment of error and Capstone's sole assignment of error provide, respectively:

"The trial court erred in granting summary judgment to the Surface Owners and denying summary judgment to Gulfport."

"The trial court erred in granting Plaintiffs-Appellees' Motion for Summary Judgment."

**{¶24}** A court properly grants summary judgment if there are no genuine issues as to material facts and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Upon viewing any evidence submitted under Civ.R. 56 in the light most favorable to the non-movant, the court must find reasonable minds can only come to a conclusion in the movant's favor in order to grant summary judgment. *Id.*

**{¶25}** The decision to grant summary judgment is reviewed de novo. *Bohlen v. Anadarko E & P Onshore, L.L.C.*, 2017-Ohio-4025, ¶ 10. We also review matters of law in a declaratory judgment action de novo. *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 13-16. "The construction of written contracts and instruments of conveyance is a matter of law." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. Like other contracts and written instruments, the construction of a deed presents a legal question reviewed de novo. *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576 (1998).

**{¶26}** As explained by the Ohio Supreme Court, we are to review the contents within "the four corners of the deed" and apply the plain and unambiguous language found therein. *LRC Realty, Inc. v. B.E.B. Props.*, 2020-Ohio-3196, ¶ 17.

<u>Case Nos. 24 JE 0023, 24 JE 0025</u>

Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.

*Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992).

**{¶27}** The Supreme Court further notes that words or phrases should not be read in isolation. *Dominish v. Nationwide Ins. Co.*, 2011-Ohio-4102, ¶ 8. Common words are given their ordinary meaning *unless* a "manifest absurdity" would result or the instrument clearly evidences some other meaning. *Shifrin* at 638 (also stating, "If no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such an ambiguity."). As repeatedly emphasized by the Supreme Court, "If we are able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract." *Saunders v. Mortensen*, 2004-Ohio-24, ¶ 9.

**{¶28}** A secondary rule of contract construction construing language against the drafter can only be applied if the contract is ambiguous and the extrinsic evidence fails to clarify the parties' intent or the meaning of a term. *Corso v. Miser*, 2020-Ohio-5293, ¶ 27-28 (7th Dist.) (while observing parol evidence is used to interpret ambiguity not to contradict words), citing *Cadle v. D'Amico*, 2016-Ohio-4747, ¶ 33 (7th Dist.) (with the grantor of a deed generally considered the drafter). Nonetheless, as set forth above, summary judgment evidence is construed in favor of the non-movant. Civ.R. 56(C). In the event parol evidence can be viewed (due to the aforementioned legal finding of ambiguity or special meaning requiring a factual determination of intent at the summary judgment stage), then the court (without weighing the evidence) asks if reasonable minds could differ after viewing the extrinsic evidence. *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 324 (1984); *see also Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 12, 18-19 ("whether a contract is ambiguous is a question of law, but the resolution of an ambiguous term in a contract is a question of fact").

**{¶29}** Yet, as the Supreme Court emphasizes, a written instrument is not ambiguous unless its terms are "susceptible to more than one reasonable interpretation." *Corder v. Ohio Edison Co.*, 2024-Ohio-5432, ¶ 14. "The mere fact that a contract's text might be subject to competing interpretations does not mean that the text is ambiguous." *Id.* If one of the competing interpretations of a term in a deed conflicts with the deed's purpose or structure or if it strains ordinary usage, then it cannot be considered reasonable. *Id.* With these premises in mind, we turn to the first issue.

<u>Deed Issue One:  Plain Language of Release Clause</u>

**{¶30}** First, Appellants argue the trial court erred in failing to enforce the release clause in the 1995 deed so as to prohibit Appellees from proceeding with this lawsuit seeking quiet title and a declaration on the meaning of that deed. The final two clauses of the deed state:

> By accepting this deed Grantees acknowledge that mining operations have been conducted on and under the premises and Grantees specifically waive and release any and all claims for damages as a result of such mining activities or related subsidence.

> By accepting this deed Grantees also acknowledge that they have inspected the premises and are acquiring the same as a result of such inspection in its present condition and circumstance, and by accepting this deed and as a part of the consideration for this conveyance, Grantees covenant and agree to assume any and all risks of the premises and Grantees, for themselves, their heirs and assigns, hereby expressly waive all rights relative to and releases the Grantor, its successors and assigns, from any and all liability, claims, demands, actions or causes of action, present or future, legal or equitable, of every kind, nature and description, arising in any manner in connection with the property or said mining operations.

(1995 Deed from R & F Coal Company to Appellees, Vol. 182, P. 805).

**{¶31}** Appellants contend this unambiguous release of all causes of action arising in any manner in connection with the property should have been enforced here because Appellees' cause of action arose in connection with the property in some manner. They assert the language of the release is not limited to mining activities or even the physical condition or circumstances of the property in 1995. They conclude the trial court's

<u>Case Nos. 24 JE 0023, 24 JE 0025</u>

statement that the release would not apply to "future conduct" is contrary to the clear release of "all . . . causes of action, present *or future*, legal or equitable, of every kind, nature and description, *arising in any manner in connection with the property* or said mining operations." (Emphasis added.) *Id.*

**{¶32}** General principles of estoppel or estoppel by deed are outlined by Appellant Capstone with an argument that Appellees are barred from denying the release within the deed because the grantor's successor relied on the deed in leasing the oil and gas. *See, e.g., Thompson v. McVey*, 2006-Ohio-7036, ¶ 13-14 (12th Dist.). However, this cited case then pointed out the doctrine was inapplicable where the party to the deed was not denying statements in the deed and the estoppel doctrine would require the other's reliance on a misleading factual misrepresentation. *Id.*

**{¶33}** Appellants emphasize, "A release is a contract that is favored by the law to encourage the private resolution of disputes." *Lewis v. Mathes*, 2005-Ohio-1975, ¶ 14 (4th Dist.). "A release of a cause of action ordinarily acts as an absolute bar to any later action on any claim encompassed within the release." *Id.*, citing *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 13 (1990).

**{¶34}** Appellees counter by emphasizing the "encompassed within the release" portion of this quote.[4] They point out their claims do not deal with the condition or circumstance of the property and maintain the trial court correctly concluded the release language did not bar a deed interpretation action. They describe Appellants' argument (about the release prohibiting a suit enforcing or interpreting the 1995 deed itself) as absurd, pointing out the conduct of encumbering the oil and gas did not occur until Capstone leased those minerals in 2007 (recorded in 2009).

---

[4] Appellees also initially argue *Gulfport* cannot enforce the release because it was not a party to the deed. However, the general third-party beneficiary law they cite does not bar a party seeking to enforce a property right (a lessee of a lease covering certain depths) from citing portions of the deed under which his lessor is claiming title to the minerals (in an action where the grantees in that deed were claiming the deed conveyed all minerals to them). As explained by the Ohio Supreme Court, an oil and gas lease transfers to the lessee a fee simple determinable in the mineral estate. *Chesapeake Expl., L.L.C. v. Buell*, 2015-Ohio-4551, ¶ 61 (with a reversionary interest retained by the lessor). Moreover, the release specifically covered the "Grantor, its successors and assigns." Regardless, Appellees do not make this argument about Capstone, the successor (by merger) to the deed's grantor. As Capstone is challenging the release as well, the trial court's decision on the release would have to be reviewed regardless of Appellees' argument on Gulfport's ability to present an argument in favor of enforcing of it.

**{¶35}** In reply, Appellants suggest we should not endeavor to envision all the future unjust actions R & F Coal Company and its successors or assigns could take in connection with the property, asserting a clear release is binding regardless of the resulting belief of injustice. They argue if deed grantees wish to be entitled to seek future deed interpretation by a court (or even to legally protest the taking of the property), they should insert language into any release of claims in order to except such future conduct by the grantors or their successors or assigns from the ban on future actions.

**{¶36}** Appellants cite a case finding a "broadly worded" release clearly and unambiguously included "any and all other claims" between the parties "past, present, or future" because it did not "specifically exclude any type of claim." *Owens v. Bridgestone*, 2020-Ohio-5156, ¶ 18 (10th Dist.) (in regards to a spoliation of evidence claim). However, the Tenth District also observed "a person executing a broadly worded release has a duty to investigate whether there are certain claims he or she wishes to exclude from the scope of the release." *Id.* Here, the grantee could not investigate (prior to accepting the deed) whether the coal company grantor's successor may (12 years later) try to interpret that very deed as creating a new reservation of all oil and gas. Moreover, the Tenth District warned, "releases from liability for future tortious conduct are generally disfavored by the law and will be narrowly construed," before concluding such releases bar future tort liability "*where the intent of the parties is stated in clear and unambiguous terms*." (Emphasis added.) *Id.* at ¶ 18.

**{¶37}** Appellant Gulfport emphasizes the Supreme Court's *Shifrin* case, cited above for the black letter law on plain language versus ambiguity. It is claimed the situation in the case at bar is comparable to the Court's decision applying the plain language of two releases while rejecting a plaintiff's argument that "the parties would not have agreed that Forest City was obligated to pay Shifrin's distributive share during the interim period without providing Shifrin the means legally to enforce such payments . . ." *Shifrin*, 64 Ohio St.3d at 639 (where the defendant bought out the plaintiff from their general partnership under an auction agreement and then an agreement assigning the partnership interest, both containing a release).[5]

---

[5] In *Shifrin*, the release in the auction agreement was effective on consummation and released "all claims of every kind with respect to the partnership from its inception and the Property" (with one exception); the release in the agreement assigning the partnership interest was effective on the date of the transfer and released all "claims against the Partnership or liability under any claims, legal or equitable, proceedings, suits, judgments, decrees, liabilities, obligations and/or taxes, which accrue on or after the effective date hereof . . ." *Shifrin*, 64 Ohio St.3d at 638-639, fn. 3-4.

**{¶38}** However, the facts and arguments in that case are distinguishable. Those releases were made *after the agreement the plaintiff was attempting to apply* while proposing a calculation of the amount due. *See id.* at 636-637. The Supreme Court did not hold the plaintiff was barred from asking for an interpretation of the agreements containing the releases. Moreover, the *Shifrin* plaintiff was attempting to prove "latent ambiguity" in the releases by pointing to a partial distribution paid to him for an interim period and by presenting testimonial evidence on intent to pay him some amount during the interim period. *See id.* at 637-639. In the case at bar, the trial court did not find the release clause was ambiguous but rather found it to be plain and unambiguous in favor of Appellees.

**{¶39}** In doing so, the trial court considered the language at the beginning of the very sentence at issue in the release clause, dealing with the property's "present condition and circumstance." The court concluded the subsequent reference to releasing "present and future" claims would include future damage caused by the condition and circumstance at the time of the deed but would not include future conduct newly inflicted upon Appellees. Here, the future conduct was Capstone acting as a lessor and signing the 2007 lease of the property's oil and gas. The trial court did not create a new clause by ignoring words used in the four corners of the deed or find the plain language was contrary to the parties' intention at drafting as alleged by Appellants.

**{¶40}** Contrary to Appellants' argument, the release clause in the deed did not bar a future action to interpret that very deed (such as an action seeking a declaration of whether minerals were reserved in the same deed containing the release clause). In a single sentence, the grantees acknowledged they were acquiring the property in its "present condition and circumstance" after inspection, agreed to assume all risks of the premises, and "waive[d] all rights relative to and release[d] the Grantor, its successors and assigns, from any and all liability, claims, demands, actions or causes of action, present or future, legal or equitable, of every kind, nature and description, arising in any manner in connection with the property or said mining operations." The end of the sentence must be read in context with the other parts of the sentence and any incorporated sentence.

**{¶41}** The ending phrase "or said mining operations" refers the reader to the prior sentence: "By accepting this deed Grantees acknowledge that mining operations have

been conducted on and under the premises and Grantees specifically waive and release any and all claims for damages as a result of such mining activities or related subsidence."

{¶42} Appellants assert the second sentence in the release clause did not relate solely to mining operations because it concludes with "in connection with the property *or said mining operations*." (Emphasis added.) (1995 Deed). Nevertheless, clearly this does not indicate the use of the word "property" before "or said mining operations" demonstrated the grantees can never ask for deed interpretation.

{¶43} No reasonable person could read the release (along with the overall content of the deed) as meaning the property grantees are forever barred from arguing to a court that the grantor or successors were acting contrary to the very deed containing the release (such as by entering the property and camping, cutting trees, taking minerals when none were reserved to the grantor, taking a different type of mineral than reserved, or ignoring the deed all together and reselling the property). The court must give effect to the language of the writing using the only reasonable interpretation that carries out the purpose for which it was created without straining ordinary usage. *See, e.g., Corder*, 2024-Ohio-5432, at ¶ 14, 16 (competing interpretations do not make plain language ambiguous if one interpretation is not reasonable). The purpose of the 1995 deed was to convey the property to the grantees, and the release clause was speaking of claims arising out of the property's condition and circumstance even if they manifest in the future.

{¶44} Regardless, the cited language in the release clause did not render the grantees and their heirs and assigns subject to the future will of the grantor and their successors to retake the land or mine for any minerals it claims it reserved with no ability for court interpretation of the very deed containing the release itself. Reading the release in the deed as meaning the grantor or its successors are immune from liability for any of their future conduct toward the property or as meaning that the grantees waived the right to have a court interpret what was transferred by the same deed would be a "manifest absurdity." *See Shifrin*, 64 Ohio St.3d at 638.

{¶45} In fact and alternatively, Appellants' construction of the release would make much, if not all, of the deed essentially meaningless. *See generally Saunders*, 2004-Ohio-24, at ¶ 16 (where the Supreme Court explained the intent of each portion of a contract is gathered from a consideration of the entire contract and the court must give effect to each provision but only if it is reasonable to do so), citing, *e.g., Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361,

Case Nos. 24 JE 0023, 24 JE 0025

363 (1997) (in applying the plain language of a construction contract, the Court reversed the appellate court and reinstated a trial court's summary judgment emphasizing the court must "avoid any interpretation of one part which will annul another part").

**{¶46}** In sum, a plain reading of the deed and its release clause (with language about waiving and releasing all causes of action, present or future, of every kind arising in any manner in connection with the property) does not release the grantor from future acts taken against the property in contravention of the grantees' rights under the deed. (Whether those acts were performed in contravention of the grantees' rights under the deed is the next question.)  Consequently, the trial court did not err in holding the release clause in the deed did not bar this action seeking to apply or interpret the deed.

<u>Deed Issue Two:  Plain Language of Excepting and Reserving Clause</u>

**{¶47}** After setting forth the property description and prior instrument reference, the 1995 deed stated:

UNDER AND SUBJECT to any and all exceptions, reservations, restrictions, easements, rights of way, highways, estates, covenants and conditions apparent on the record or shown by instruments of record.

EXCEPTING AND RESERVING all coal, oil, gas and other minerals, mining rights and other rights and privileges heretofore conveyed.

(1995 Deed from R & F Coal Company to Appellees, Vol. 182, P. 805).

**{¶48}** Appellees' lawsuit was based on the position that this excepting and reserving clause did not constitute a present exception of all minerals in favor of the grantor (i.e., it was not a new mineral reservation).  Their summary judgment motion asserted the language unambiguously granted them all minerals that were not conveyed prior to the 1995 deed.  As recited by Appellees, heretofore means "before this time" and conveyed means transferred, citing *Black's Law Dictionary* (11th Ed. 2019).

**{¶49}** The trial court agreed with Appellees' plain language argument and rejected the opposing legal contention of Appellants Capstone and Gulfport, which claimed the deed excepted and reserved all oil and gas whether or not it had been previously conveyed.  The court found the deed unambiguously reserved "only those interests previously conveyed and existing" because the phrase "heretofore conveyed" clearly limited the mineral reservation, rendering the excepting and reserving clause only applicable to "all coal, oil, gas and other minerals, mining rights and other rights and privileges" that had in fact been heretofore conveyed.

<u>Case Nos. 24 JE 0023, 24 JE 0025</u>

{¶50} On appeal, Appellants maintain the excepting and reserving clause unambiguously constituted a new reservation of all of the oil and gas underlying the property. In doing so, they claim this construction is the only way to give meaning to both the subject and the excepting and reserving clauses, citing *Sunoco, Inc. v. Toledo Edison Co.,* 2011-Ohio-2720, ¶ 54 (where possible, give effect to every contract provision; if a construction of a "doubtful" provision would render a clause meaningless and another construction would give the clause meaning, then the latter construction prevails). Appellants point out a subject to clause protects the grantor's warranty of title by giving general notice that the deed is subject to instruments of record, citing *Miller v. Lowery*, 468 So.2d 865, 867 (Miss. 1985) (where the subject to clause merely protected the grantor's warranty of title and did not reserve the minerals without words of exception or reservation). They conclude the trial court's decision rendered the excepting and reserving clause superfluous or partially repetitive, believing the court essentially "lumped" it together with the subject to clause, which already served to give notice to protect the grantor's warranty of title as to prior conveyances of record.[6]

{¶51} Emphasizing the presence of these two deed clauses here, Appellant Gulfport observes this court has pointed to the absence of two separate clauses when considering whether deed language merely provided notice of a prior reservation. *Corso*, 2020-Ohio-5293, at ¶ 34 (7th Dist.) ("There is not a separate sentence that the grantor was reserving and excepting the minerals for himself. And then, a separate sentence giving notice of the prior coal conveyance."). In *Corso*, the issue was whether the excepting and reserving clause was a new reservation of oil and gas where it applied to "all coal and minerals underlying the same with the right to mine and remove the same as shown in the deed to Henry Wick, wherein said coal was conveyed . . ." *Id.* at ¶ 29-38 (considering the use of the term "minerals" at the time). We opined the language was ambiguous because the "as shown in" phrase could "modify/limit the coal and minerals when no minerals were conveyed in the Wick Coal Deed . . ." *Id.* at ¶ 38 (we then found the extrinsic evidence did not clarify the intent, which allowed the invocation of the

---

[6] Later, Capstone makes an alternative argument on ambiguous language allowing a review of extrinsic evidence (in the form of affidavits on the intent of R & F Coal representatives). In that section, Capstone reiterates the claim of a "duplicative coal exception" if the "heretofore conveyed" language in the excepting and reserving clause is read to cover only prior mineral conveyances (due to the subject to clause giving notice of prior recorded conveyances). We note the parties do not dispute what the conveyances prior to the 1995 deed included.

construction against the grantor rule, resulting in the language being construed against the grantor *as reserving no oil and gas*).

**{¶52}** First, we note Appellant Gulfport (the party citing this case) is not arguing the deed was ambiguous. Appellant Capstone does set forth an alternative extrinsic evidence argument, which is addressed in the next section. However, Capstone's brief (filed three weeks after Gulfport's brief) avoids citing *Corso*. This is likely because other statements in *Corso* are unfavorable to Appellants' plain language argument.

**{¶53}** Specifically, the *Corso* case observed the dispositive deed *did not* use phraseology such as "heretofore sold and conveyed" (as was used in a prior deed). *Id.* at ¶ 37-38. We described such phrase as "limiting language" *and thereby suggested the use of that phrase would have plainly limited the reservation to minerals already conveyed*. *Id.*

**{¶54}** Moreover, our court subsequently ruled on a deed containing the "previously conveyed" phrase (which phrase is not argued to be distinct from the "heretofore conveyed" phrase used here). *Kocher v. Ascent Resources-Utica, LLC*, 2023-Ohio-3592 (7th Dist.). Appellees cited *Kocher* as precedential to the trial court and continue to maintain their reliance on it. In arguing the phrase does not limit the rights excepted and reserved but rather was an erroneous recital of a conveyance that did not occur in the past, Appellants ask us to refrain from applying our *Kocher* holding.

**{¶55}** In *Kocher*, an estate deeded its one-tenth share of property to a coal company in 1957; no minerals were reserved in this deed (from executor Rembish for the estate of Belon). *Id.* at ¶ 29-31 (the coal company was granted the remaining shares of the property in deeds "excepting and reserving all minerals except Vein Number Eight"). In 2000, the coal company conveyed portions of the property to different grantees in deeds containing the following clause: "EXCEPTING AND RESERVING all coal, oil, gas, mineral rights and mining rights previously conveyed." *Id.* at ¶ 33-36 (one deed additionally said, "EXCLUDING all coal, oil, gas and mineral rights previously conveyed").

**{¶56}** The coal company argued these deeds "included clear and unambiguous new reservations of mineral rights" in its favor as the grantor (so as to retain any minerals not previously conveyed), while the other side argued the grantees in the 2000 deeds acquired all minerals not conveyed prior to the 2000 deeds. *Id.* at ¶ 44 (in an action seeking quiet title under the Marketable Title Act). As to the former Rembish/Belon interest, the trial court opined: "The 'EXCEPTING AND RESERVING all coal, oil, gas,

mineral rights previously conveyed language' asserted by Bedway as a claim to ownership of the Belon interest does not clearly except or reserve any oil and gas minerals actually owned by Bedway Coal from the subject transactions. Whatever interest Bedway had to the Belon interest was conveyed to the Defendants and/or their predecessors in interest." *Id.* at ¶ 44-45.

**{¶57}** In the *Kocher* appeal, it was argued the trial court erred in finding the 2000 deeds did not create reservations in favor of the coal company. *Id.* at ¶ 60-61 (addressing the 1/10 interest conveyed to the coal company by the Rembish/Belon deed wherein no minerals had been reserved by the grantor). We held:

> The inclusion of the words "previously conveyed" makes it abundantly clear [the coal company] was not creating a new reservation in its favor, but was instead acknowledging and repeating that previous rights had been excepted. This conclusion is consistent with a plain reading of the language employed in the deed, and there is no ambiguity in this regard.

*Kocher*, 2023-Ohio-3592, at ¶ 64 (7th Dist.). We therefore affirmed the trial court's conclusion that the coal company reserved no minerals to itself in the 2000 deeds by "excepting and reserving all coal, oil, gas, mineral rights, and mining rights *previously* conveyed." *Id.* at ¶ 63, 65.

**{¶58}** Appellants present various contentions attempting to distinguish *Kocher* from the case at bar. For instance, Appellant Capstone asks to distinguish *Kocher* based on their extrinsic evidence for an ambiguous deed (discussed in the next section); however, rules for evaluating an ambiguity were irrelevant and never reached in *Kocher* as we found the deed language clear as a matter of law.

**{¶59}** Both Appellants claim *Kocher* is distinguishable because there was no release in that case. However, the release clause is a discrete issue argued in this case, briefed separately and analyzed above; the release argument is not related to the ascertainment of the meaning of the excepting and reserving clause.

**{¶60}** Appellants also suggest the case at hand may be distinguished from *Kocher* because the subject to clause here already contained notice that title was subject to instruments of record. However, there is no indication the deeds in *Kocher* lacked a subject to clause with notice the title was subject to recorded agreements. Moreover, a broad subject to clause (stating the grant is subject to all prior agreements or instruments of record or listing some examples that may or may not exist) does not necessarily mean

Case Nos. 24 JE 0023, 24 JE 0025

the subsequent use of an excepting and reserving clause must be a new reservation of rights to the grantor because it may be partially redundant. Appellants cite no law stating otherwise and rely on the general contract principle of giving meaning to each clause "if possible." *See Sunoco,* 2011-Ohio-2720, at ¶ 54.

**{¶61}** Appellants then propose our *Kocher* case should not be followed because it does not discuss the "false recital" deed principle. Under this doctrine, they assert an erroneous recitation of past conveyances that did not in fact occur does not limit the scope of the rights excepted or reserved (where it is merely an extraneous description). Appellant Gulfport provides a case review of three out-of-state cases on the topic, and Appellant Capstone relies on one of those cases as well.

**{¶62}** Appellees respond by asking us to maintain and apply our on-point *Kocher* holding without resort to the out-of-state case law relied on by Appellants. Even assuming Ohio courts would utilize the "false recital" legal principle from those cases, the deed language to which the law was applied in those out-of-state cases is sufficiently distinguishable from the language at issue here.

**{¶63}** In the *Pich* case cited by Gulfport, a 1943 deed conveyed land "Save and Except an undivided three-fourths of the oil, gas and other minerals in, on and under said land, which have been heretofore reserved." *Pich v. Lankford*, 157 Tex. 335, 337 (1957). The next deed, in 1947, conveyed the land "Save and Except an undivided three-fourths of the oil, gas and other minerals in and under the Southwest Quarter thereof, and an undivided one-fourth of the minerals in and under the remainder of said survey, which minerals do not belong to the grantors herein." *Id.* However, it was later determined no minerals had been reserved prior to the 1943 deed (only part of the royalty). The Texas Supreme Court concluded the 3/4 interest of the minerals in place was excluded from the grants in both deeds regardless of the false recitals after the exceptions. *Id.* at 342 (in favor of Pich, who obtained the grantor's interest in each deed). In finding no ambiguity, the court reasoned:

> The deeds do not except from the grants only such royalty interests or interests in the minerals as 'have heretofore been reserved' or that 'do not belong to the grantors herein'; they except an undivided three-fourths (3/4) interest in the minerals in place in plain and unambiguous language. The quoted phrases are but recitals which purport to state why the exceptions are made. The chain of title conclusively negatives the recitals. It shows

they are false. The giving of a false reason for an exception from a grant
does not operate to alter or cut down the interest or estate excepted, nor
does it operate to pass the excepted interest or estate to the grantee.

*Id.* at 339-340, citing, e.g., *Roberts v. Robertson*, 53 Vt. 690 (1881) (where the deed said the grantor was "reserving lots sold, Nos. 1, 2, 3, . . . 32, 33" but where lots 32 and 33 had not been sold, the grantor's false recital describing why lots 32 and 33 were reserved did not eliminate them from the grant).

**{¶64}** In the *Roberts* case cited by *Pich*, the Vermont Supreme Court explained what is sometimes called the false recital doctrine: "In all cases the inquiry is, Is there a grant of a specific thing? if so, the addition of an untrue circumstance attending it, shall not defeat the grant. The description, so far as it is false, is treated as applicable to no subject at all; so far as it is true, as applicable to one subject only." *Roberts* at 693. Notably, however, that court then specifically observed if the deed said, "I except all the lots heretofore sold," then the reserving clause would have applied to *only* the lots previously sold. *Id.*

**{¶65}** In other words, a phrase constructed in a manner similar to the case at bar was opined to be a limitation, not an exception of all lots with an ignorable false recital that all listed lots had been sold. *Id.* We also point out the *Pich* case quoted the example phrase "except all lots heretofore conveyed" (provided by the *Roberts* case) while contrasting the language in its case "except . . . minerals in, on and under said land, which have been heretofore reserved." *Pich* at 340. The word "which" and the comma preceding such word are distinctive and important.

**{¶66}** Deed language "excepting and reserving all oil and gas heretofore conveyed" is different from the language "excepting and reserving all oil and gas, which have been heretofore conveyed." The latter grammatical clause (set off by a comma and introduced by the word "which") is the recital of reasons (and under the false recital doctrine, whether those reasons are false or not does not inure to the benefit of the grantee). Distinctly, the former grammatical phrase is not a mere recital of reasons but is a limitation on the excepting and reserving clause.

**{¶67}** "Nonrestrictive clauses describe part of a sentence, but are not essential to the meaning of the sentence (versus restrictive clauses that are necessary to understand the sentence)." *Gateway Park, L.L.C. v. Ferrous Realty Ltd.*, 2008-Ohio-6161, ¶ 39 (8th Dist.), citing Wydick, *Plain English for Lawyers,* at 91 (4th Ed. 1998). Accordingly, the

Eighth District found plain language in a deed by reading the reservation after omitting the nonrestrictive clause (set off by commas and beginning with the word "which"), finding that clause merely described the retained land. *Id.* at 39-41.

**{¶68}** Grammatically, a writer is instructed to "[u]se *which* to introduce clauses containing supplemental information, i.e., clauses that are set off by commas and could be eliminated without changing the meaning of the sentence." *Supreme Court of Ohio's Writing Manual*, at 121 (3d Ed. 2024) (while an adjective clause containing essential information about the preceding noun cannot be eliminated without changing the meaning of the sentence and would be preceded by "that" with no comma). The grammar situation in the case at bar, involving the lack of the word "which" and the lack of a comma to set off the clause "heretofore conveyed" from the nouns (the various minerals), is akin to using "that were" between the noun and the adjectival phrase (i.e., "excepting and reserving the minerals that were heretofore conveyed"). This analysis supports the position of Appellees.

**{¶69}** Nevertheless, we review the other two out-of-state cases cited by Appellants. In the case cited by both Gulfport and Capstone, the original grantor executed a mineral right and royalty deed in favor of his relatives in June 1942. *Oldham v. Fortner*, 221 Miss. 732, 735 (1954). In August 1942, he conveyed the land to the plaintiff's predecessor-in-title in a deed stating, "except all minerals and mineral rights, heretofore sold and conveyed . . ." *Id.* Years later, the plaintiff sought to have the June mineral deed declared void in order to obtain the minerals under the August property deed by asserting only the previously conveyed minerals were excepted from the August property deed. *Id.* at 735-737. The Mississippi Supreme Court disagreed and concluded the exception of all minerals from the August property deed was a valid exception regardless of (and was not dependent on) the validity of a prior conveyance. *Id.* at 740, 743.

**{¶70}** The court explained: "in general a grantor who makes a reservation or an exception in his deed does not part with the title to that which is thus excepted or reserved, and where not already outstanding in another necessarily remains with the grantor; and such an exception or reservation will be good as to property recited to have been previously sold or conveyed, although the recital is false." *Id.* at 743. The court pointed out the grantee of the August property deed received what he bargained for regardless of whether the recital was true (and the minerals were conveyed to the grantor's relative) or false (and remained with the grantor due to some issue with the prior conveyance). *Id.*

Case Nos. 24 JE 0023, 24 JE 0025

{¶71} Although the *Oldham* deed did not use the word "which" before the "heretofore sold and conveyed" phrase, a comma was used to set off the phrase from the noun so that it did not limit the reservation (but instead provided reasons for it, which may or may not be true). We note even if a jurist was inclined to disregard the comma as meaningful, this out-of-state case would conflict with our *Kocher* case, and it is our own case law that has precedential value here.

{¶72} In the third out-of-state case cited by Gulfport, the federal government granted a land patent reserving all coal and the right to mine coal. *Cantley v. Hubbard*, 623 So.2d 1079, 1080 (Ala.1993) (the first private landowner conveyed the property in a 1925 deed excepting all coal and the right to mine explaining the coal was owned by the U.S.). In 1929, the next landowner conveyed the property in a deed stating, "All mineral reserved to the United States." The heirs of the 1929 deed grantees claimed they owned all minerals except coal because the United States did not own any other minerals. *Id.*

{¶73} However, the Alabama Supreme Court ruled in favor of the heirs of the 1929 deed grantors, stating the language plainly reserved all minerals to the grantor regardless of an erroneous recitation of fact (on the prior status of all minerals). *Id.* at 1081-1082, citing *Turner v. Lassiter*, 484 So.2d 378, 379 (Ala. 1985) (where a deed said "except all oil, gas and minerals, one-half of which have been reserved by prior owners and one-half of which the undersigned expressly reserves unto himself, his heirs and assigns," the court held all minerals were clearly excepted and the phrase about prior owners was "merely a recitation of fact, which may or may not have been erroneous").

{¶74} The clause in *Cantley* is not comparable to the clause at issue in the case at bar. Also, the *Turner* example cited by the *Cantley* Court reinforces the effect of a comma followed by the word "which" on the application of the false recital doctrine. Essentially, *Cantley* opined "All minerals reserved to the United States" was equivalent to "All minerals reserved, which have been heretofore reserved to the United States." (That is, the *Cantley* phrase was not equivalent to "reserving all minerals heretofore conveyed to the United States" or "reserving all minerals that were heretofore conveyed to the United States.")

{¶75} In sum, the out-of-state cases relied on by Appellants cited a legal principle of false recital in cases applying it to deed language that is not akin to the deed language in our *Kocher* case or to the deed language in the case at bar (which is akin to our *Kocher* case). Using ordinary grammar rules and a common sense reading, a reasonable person

could only read the deed as excepting only the minerals "heretofore conveyed" (i.e., "that were heretofore conveyed").  As explained above, the quoted phrase was a limitation on the nouns in the excepting and reserving clause; it was a grammatical restrictive clause (describing what was excepted) rather than a non-restrictive clause (explaining only why the noun was excepted).  Contrary to Appellant's position the trial court did not rewrite the contract or render a clause meaningless; rather, it is Appellants' interpretation that asks us to add words and/or punctuation to convert a restrictive clause into a non-restrictive clause.  "The mere fact that a contract's text might be subject to competing interpretations does not mean that the text is ambiguous" or that the plaintiffs' reading is not plain. *Corder*, 2024-Ohio-5432, at ¶ 14. Appellants construction "strains ordinary usage" and thus would not be considered reasonable.  *See id.*

{¶76}  We maintain our holding in *Kocher* and reject Appellants' argument that the false recital doctrine applies to reserve all minerals to the grantor of the 1995 deed.  Accordingly, we affirm the trial court's August 20, 2024 decision granting summary judgment to Appellees on the title issues.  We therefore need not dispositively resolve Capstone's alternative ambiguity argument reviewed next for thoroughness.

<u>Deed Issue Three:  Extrinsic Evidence on Intent to Reserve Oil & Gas</u>

{¶77}  An alternative issue presented in Appellant Capstone's brief points to extrinsic evidence in the event we conclude the 1995 deed language was ambiguous.  As set forth in the general section reviewing deed construction law, parol/extrinsic evidence can be viewed only if the deed language is ambiguous or circumstances surrounding its execution give special meaning to language.  *Shifrin*, 64 Ohio St.3d at 638.  Capstone incorporates some arguments set forth above on a "duplicative coal exception" if the "heretofore conveyed" language in the excepting and reserving clause cover only prior mineral conveyances (due to the subject to clause giving notice of prior recorded conveyances, as discussed above).  Capstone then argues if we find ambiguity on whether the deed created a new mineral reservation, then the extrinsic evidence on the intent of the parties to the deed conclusively shows Capstone's predecessor-in-title (R & F Coal Company) intended to reserve the oil and gas when selling the property to Appellees, citing the affidavits of the president and the senior landman at R & F Coal Company at the time of deed execution.

{¶78}  Those affiants said R & F Coal Company's standard practice on the sale and auction of its property was to retain any and all minerals, including oil and gas.  The

<u>Case Nos. 24 JE 0023, 24 JE 0025</u>

president additionally said during his tenure any property auctioned after mining involved a sale of the surface with an intent to retain all minerals, including oil and gas; the landman said any property sold while he was so employed, was intended to be a sale of the surface with a retention of all minerals including oil and gas. Both then specifically claimed the intent of the deed from R & F Coal Company was to convey only the surface to Appellees. (D. Michael Jamison Affidavit, who signed the 1995 deed as president of R & F Coal, which merged into a similarly named company and then into Capstone); (John P. Dutton Affidavit, current president at Capstone and former senior landman at R & F Coal, who witnessed the 1995 deed).

{¶79} Capstone claims Appellees failed to meet their reciprocal summary judgment burden to show a different intent, while noting a deed is only construed against the drafter if the extrinsic evidence fails to clarify the meaning. *Corso*, 2020-Ohio-5293, at ¶ 28 (7th Dist.), citing *Cadle*, 2016-Ohio-4747, at ¶ 33 (7th Dist.). In contending Appellees failed to present evidence on the intent of the deed grantees (Rich Pilney, Anthony DiLuzio, and John Vickers), Capstone cites to the depositions of Mr. and Mrs. Vickers. As Appellees counter, Mr. Vickers had been diagnosed with a cognitive impairment, and his wife did not meet him until more than 15 years after the 1995 deed.

{¶80} Capstone also cites the deposition of Mr. DiLuzio where he testified he did not research the title to the property prior to the auction and did not know why the October 1995 auction purchase agreement (in the blank after the typed clause "It is further agreed by both parties that") added the following language: "all parcels being sold by the acre, and subject to easements, restrictions, and conditions of record and excepting any previously conveyed coal and mineral rights."

{¶81} When asked if he had discussions with anyone from the auction company (Dutton) about the mineral rights, Mr. DiLuzio said, "No. Not that I remember. No." He noted his wife and Mr. Pilney were standing next to him at the time; Rich Pilney was the purchaser who signed the auction purchase agreement.

{¶82} Appellees point out this does not show an intent to purchase only the surface. They urge the lack of discussion supports their position, as there would have been a discussion if the coal company intended to sell only the surface in spite of the language of the auction purchase contract. As Appellees emphasize, the auction purchase contract was the basis for the deed at issue. It discussed what would become

the subject to clause and then clearly stated, "excepting and reserving any previously sold and conveyed coal and mineral rights."

**{¶83}** Capstone does not argue this language from the auction purchase contract had a meaning different than claimed by Appellees. Nor is there a cited explanation as to the auction event (or as to Capstone's auction agent selling the property in a contract with this language). The argument in Capstone's initial brief seemingly ignores the auction and the resulting auction purchase contract.

**{¶84}** Yet, Capstone's reply brief then opposes reliance on this contract by citing the doctrine of merger by deed (and making various irrelevant observations about the agreement). They cite a Supreme Court case holding: "Where a deed is delivered and accepted without qualification pursuant to agreement, no cause of action upon the prior agreement thereafter exists." *Fuller v. Drenberg*, 3 Ohio St.2d 109 (1965), syllabus.

**{¶85}** Nevertheless, Appellees' cause of action was not based on the prior agreement; it was based on the plain language of the 1995 deed. Oddly, it was Capstone's initial brief that raised the alternative argument of ambiguity, recognizing the parol evidence rule would not bar extrinsic evidence if the deed language was unclear, but then later essentially argues certain extrinsic evidence is precluded from being viewed in ascertaining intent even though it was the precursor to the deed at issue.

**{¶86}** The merger by deed doctrine is an instrument construction principle based on the integration rule of contracts, which is derived from the parol evidence rule and the general theory of ascertaining contractual intent. *V.T. Larney, Ltd. v. Locust St. Invest. Co., LP*, 2019-Ohio-496, ¶ 28 (7th Dist.); *see also Olenchick v. Scramling*, 2020-Ohio-4111, ¶ 43 (11th Dist.), citing *Newman v. Group One*, 2005-Ohio-1582, ¶13 (4th Dist.); *Brown v. Ward*, 2019-Ohio-4848, ¶ 29 (5th Dist.). Pursuant to the parol evidence rule, a final integrated contract cannot be modified, contradicted, or supplemented by prior written agreements (or by prior or contemporaneous oral agreements). *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000) (unless to show fraud, mistake, or other invalidating cause). This rule protects the integrity of written contracts by ensuring stability, predictability, and enforceability of finalized written agreements. *Id.*

**{¶87}** Conversely, if the parol evidence prohibition is being lifted because a final contract at issue is unclear, then the parol evidence tenets are inapplicable as they apply to unambiguous writings. *See generally Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 440 (1996) ("the parol evidence rule will not be overcome by merely

alleging that a statement or agreement made prior to an unambiguous written contract is different from that which is contained in the contract"). In other words, if the deed is ambiguous and the parol evidence bar is thus inapplicable, the agreement precipitating the deed can be evaluated in ascertaining intent of the parties to the deed. *See, e.g., Miller Lakes Community Servs. Assn., Inc. v. Schmitt*, 2016-Ohio-339, ¶ 62 (9th Dist.) (prior agreement can be part of extrinsic evidence when interpreting ambiguous deed language); *see also Miller v. Cloud*, 2016-Ohio-5390, ¶ 76 (7th Dist.) (merger by deed doctrine does not apply and the sales contract can be viewed after parol evidence bar is lifted, in a case where mutual mistake threshold was met), citing *Osborne, Inc. v. Medina Supply Co.*, 1999 WL 1260865 (9th Dist. Dec. 22, 1999) ("Medina Supply does not seek to enforce the lease and option agreements that were previously entered into by the parties. Rather, the documents are offered as proof of the parties' intentions regarding the creation of an easement. The documents serve merely as parol evidence of the mutual mistake of the parties with regard to the boundaries of the easement. Therefore, the merger of deeds doctrine is inapplicable").

**{¶88}** In any event, Capstone's initial brief did not make an argument that merger by deed barred certain extrinsic evidence from being viewed in the event the excepting and reserving clause was found to be ambiguous.[7] Notably, the trial court specifically utilized the auction purchase agreement in the judgment entry when assuming for the sake of argument that the deed's language was unclear and entertaining Capstone's alternate ambiguity argument on parol evidence. (8/20/24 J.E. at 3). Clearly then, this argument should have been directly addressed to this court in Capstone's initial briefing on the extrinsic evidence, rather than in a reply brief. *See, e.g., Trinity Financial Servs., LLC v. D'Apolito*, 2024-Ohio-825, ¶ 50 (7th Dist.) (raising new arguments in a reply brief would deprive the opponent of the right to respond).

**{¶89}** Returning to the extrinsic evidence cited by the parties here, even if the deed were considered ambiguous, it would not entitle Capstone to summary judgment as

---

[7] Capstone's initial brief mentioned the doctrine of "estoppel by deed" as prohibiting Appellees from disclaiming the truth of the statements in the deed (which is sometimes analyzed as a concept similar to merger by deed); however, it was under the *release* section of Capstone's brief (not the excepting and reserving section) and was only set forth to criticize the trial court's reading of *the plain language* of the deed's release clause.

argued in the initial brief, as the claims of their affiants are in conflict with the plain language of the auction purchase agreement.

**{¶90}** In arguing the extrinsic evidence conclusively establishes their predecessor's intent to exclude all minerals from the grant of the land and entitled Capstone to summary judgment, Capstone's brief does not alternatively argue if we disagree, then they would be entitled to trial on the parties' intent because reasonable minds could differ. This appeared to be due to Capstone's recitation of the rule for construing the deed against the grantor (who is generally presumed to be the drafter but who was also actually the drafter in this case). *Corso*, 2020-Ohio-5293, at ¶ 28 (7th Dist.), citing *Cadle*, 2016-Ohio-4747, at ¶ 33 (7th Dist.) (if parol evidence can be viewed due to a legal finding of ambiguity but it fails to clarify the parties' intent and the meaning of a term, only then may a secondary rule of construction be applied whereby the language is construed against the drafter, with the grantor of a deed generally considered the drafter). Subsequently, in the reply brief, Capstone attempts to add another alternative argument, claiming even if the extrinsic evidence does not conclusively establish the intent to create a new mineral reservation, reasonable minds could differ and a trial should ensue (thus alternatively seeking a different remedy than in the initial brief). Again, arguments against the trial court's decision cannot be reserved for the reply brief. This was not a mere response to an argument in Appellees' brief but constituted an alteration of the disposition sought.

**{¶91}** Regardless, under the plain language section above, we concluded the deed language unambiguously conveyed to the grantees all minerals that were not already conveyed.

PREJUDGMENT INTEREST

**{¶92}** Lastly, on an issue not affecting Capstone, Appellant Gulfport's final assignment of error contends:

"The trial court erred in assessing prejudgment interest against Gulfport."

**{¶93}** Gulfport withheld the subject royalty payments from Appellees due to Capstone's adverse title claim to the oil and gas. In protesting prejudgment interest, Gulfport cites to following clause in Appellees' lease with Gulfport:

TITLE: If Lessee receives evidence that Lessor does not have title to all or

any part of the rights herein leases, Lessee may immediately withhold

Case Nos. 24 JE 0023, 24 JE 0025

payments that would be otherwise due and payable hereunder to Lessor until the adverse claim is fully resolved.

(Vickers Lease; DiLuzio Lease).

**{¶94}** During the summary judgment proceedings, Gulfport complained Appellees' royalty calculation failed to deduct certain costs and failed to include a breakdown of the specifics of the computation. In so complaining and seeking further discovery, Gulfport generally concluded, "The Court should not award damages and prejudgment interest to Plaintiffs based purely on their say-so . . ." (S.J. Opp. 7). At that point, Gulfport did not point to the title clause in their own lease as a bar to prejudgment interest (or claim Appellees were not entitled to prejudgment interest if they established damages).

**{¶95}** The trial court entered summary judgment in favor of Appellees and against Capstone and Gulfport on the title issues by holding Appellees owned the oil and gas underlying the property. Due to the dispute over the allocation of costs in calculating the royalty, the court denied Appellees' request for summary judgment on damages. A bench trial between Appellees and Gulfport proceeded to resolve the dispute over the precise amount of royalties Gulfport owed Appellees under their leases. Before announcing judgment, the court allowed post-trial briefing.

**{¶96}** Appellees' post-trial brief set forth its calculation of unpaid accrued royalties without the disputed costs ($862,556.32) and sought statutory pre-judgment interest. They attached a royalty calculation exhibit showing the interest on amounts due from when production began in 2021 through August 1, 2024 ($64,959.47).

**{¶97}** Gulfport's post-trial brief sought to reduce the amount of royalties owed by certain costs (an issue not raised on appeal), attaching an exhibit showing a correspondingly lower amount of royalties (approximately $768,277). This exhibit included prejudgment interest on those royalties.

**{¶98}** A footnote in Gulfport's post-trial brief pointed out the calculation was provided due to the partial summary judgment on title but noted an appeal would be taken from that prior decision. Next, the footnote stated, "Gulfport is providing a calculation of prejudgment interest but denies that prejudgment interest is appropriate in this case because the Leases provide that Gulfport 'may immediately withhold payments that would be otherwise due and payable hereunder to Lessor' until an adverse claim to title is resolved."

{¶99} As requested by Appellees, the trial court ordered Gulfport to pay prejudgment interest at the statutory rate (on the $862,556.32 in accrued unpaid royalties from the start of production through August 1, 2024). In discussing prejudgment interest, the court first generally stated Appellees were entitled to prejudgment interest because liability was based on a written instrument. Additionally, the trial court opined Gulfport took bad faith positions in this case and suggested Gulfport violated a duty of good faith implied in the payment withholding clause of the lease. The court concluded Gulfport was not entitled to keep the profit from interest on royalties belonging to Appellees.

{¶100} On appeal, there is no dispute over the calculation of prejudgment interest; the dispute is over the entitlement to it. Initially, Gulfport takes issue with the statements about bad faith. Appellees respond by complaining Gulfport did not simply learn of an adverse claim here but created the dispute by leasing the minerals from Appellees in 2018 and obtaining the Capstone Lease around the same time. Yet, Capstone created the claim by leasing the oil and gas in 2007 to a non-party (and thereafter recording it). Gulfport obtained certain lessee rights in the Capstone Lease years after Capstone executed the lease.

{¶101} Appellees also criticize Gulfport for taking a strong position against them instead of remaining neutral on Capstone's ownership claim or entering a provisional lease with Appellees, pointing out Gulfport would owe less royalties under the Capstone Lease than under Gulfport's lease with Appellees. Again, Gulfport was not just the lessee in Appellee's lease but had certain lessee rights under the Capstone Lease. Gulfport thus urges the act of defending its lease rights, even assuming a motivation of a lower royalty obligation, is not bad faith.

{¶102} It must be noted, rather than focusing on Gulfport's motives for entering or defending leases, the trial court's bad faith findings focused on its negative opinion about the merits of Gulfport's argument on costs to be deducted from royalties and of the merits of the adverse title claim at issue (previously describing as ridiculous Appellants' arguments on the release and the "heretofore conveyed" language). Gulfport points out Appellees did not make a claim for breach of implied covenant of good faith and bad faith is not an element for statutory contract prejudgment interest. Relying on the payment withholding clause of its lease with Appellees, it is urged Gulfport's good or bad faith was irrelevant because an adverse title claim affecting the payee of royalty payments was being asserted by Capstone, the successor of the grantor to the deed under which

Case Nos. 24 JE 0023, 24 JE 0025

Appellees obtained the property, and Gulfport would have been remiss in not withholding payments in case Capstone's claim prevailed.

**{¶103}** In any case, Appellees counter by emphasizing the automatic statutory entitlement to prejudgment interest for "due and payable" royalties. They also suggest that regardless of the findings on the title clause having an implied covenant of good faith regarding the merits of the adverse title claim, the trial court's observations would still be relevant to its discretion in making a factual determination on the date the payments became due and payable.

**{¶104}** By law, "the creditor is entitled" to statutory interest "when money becomes due and payable upon any . . . instrument of writing" that does not contain a different rate. R.C. 1343.03(A). This division does not require a finding on "good faith" before awarding prejudgment interest. *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 115 (1995) (as distinguished from division (C) for prejudgment interest on tort claims).

**{¶105}** In applying R.C. 1343.03(A), the Supreme Court has concluded, "The award of prejudgment interest is compensation to the plaintiff for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110 (1995), syllabus. Prejudgment interest has been enshrined legislatively as it "encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. [It] does not punish the party responsible for the underlying damages . . . but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole." *Id.* at 116-117.

**{¶106}** The point of allowing prejudgment interest on amounts due and payable under a writing is not only because of the loss suffered by the party who is deprived of investing their own money but also because of the gain obtained by the party who withheld the money. *See Landis v. Grange Mut. Ins. Co.*, 82 Ohio St.3d 339, 341-342 (1998), citing *Hogg v. Zanesville Canal & Mfg. Co.*, 5 Ohio 410, 424 (1832). Under R.C. 1343.03, "a court need only ask one question: Has the aggrieved party been fully compensated?" *Royal Elec.* at 116.

**{¶107}** The right to prejudgment interest on money due and payable under a written instrument is a matter of law as it is automatically pursuant to R.C. 1343.03(A). Nonetheless, it has been observed, "Under R.C. 1343.03(A), a trial court has

discretionary review over when the interest is to accrue . . . broad discretion is granted to the trial court to determine the accrual date of the prejudgment interest under R.C. 1343.03(A)." *Handel's Ents., Inc. v. Wood*, 2005-Ohio-6922, ¶ 89, 91 (7th Dist.) (applying an abuse of discretion standard), citing *Landis* at 342 ("Whether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if Grange had not denied benefits, or some other time based on when Grange should have paid Landis is for the trial court to determine.").

{¶108} In accordance, the Supreme Court pointed out it has "specifically and clearly declined to establish a bright-line rule regarding the accrual date of prejudgment interest but rather left such a determination to the trial courts on a case-by-case basis." *Miller v. Gunckle*, 2002-Ohio-4932, fn.4, citing *Landis* at 342. An abuse of discretion is more than an error in judgment but requires a finding that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990). "[W]hen applying this standard, an appellate court is not free to substitute its judgment for that of the trial judge." *Id.* The trial court's decision was clearly reasonable under the totality of the circumstances existing in this case.

{¶109} Contrary to Appellees' assertion that we apply an abuse of discretion review, Appellant Gulfport argues it is presenting a question of law as to whether a payment can statutorily be considered due and payable under a writing if the owing party refrained from making the payment due to the writing's title clause allowing the withholding of royalties "otherwise due and payable" if the owing party receives notice of an adverse title claim. In other words: Does a lessor who signs a lease with a title clause temporarily waiving the immediate ability to receive each payment due and payable under the lease, thereby legally waive the right to statutory prejudgment interest for each payment withheld under that clause?[8]

{¶110} Under Gulfport's reasoning, the title clause meant no royalties were "due and payable" for purposes of the prejudgment interest statute because the invocation of

---

[8] We note Gulfport did not place the royalties in escrow or deposit them with the trial court, as often procedurally recited in case law, and Gulfport does not claim they did not use or benefit from the withheld funds remaining in their coffers. We also note a payment withholding clause has been used historically to avoid double liability, to avoid a conversion action, or even to avoid now-defunct issues with lease forfeiture; these purposes do not conflict with the principles behind nevertheless being liable for prejudgment interest on the withheld money.

the payment withholding provision in the clause caused the otherwise due and payable royalties to lose their statutory due and payable status (until a judgment finally resolved Capstone's adverse claim to ownership of the oil and gas).

{¶111} A contractual waiver of a statutory right should not be implied. *See generally Cheatham I.R.A. v. Huntington Natl. Bank*, 2019-Ohio-3342, ¶ 30 (where the Ohio Supreme Court held, "Parties to a contract may include terms in derogation of common law, . . . but the intent to do so must be clearly indicated"); *Royal Elec.*, 73 Ohio St.3d at 116 (in a contract case, speaking of the common law right to prejudgment interest); *see also HHS Technology Group Holdings, LLC v. State*, 707 S.W.3d 788, 798-800 (Mo.App. 2025) (where the prejudgment interest statute's "due and payable" language prevailed even though the payment "holdbacks" were contractually permitted, with the court opining, "If the [contracting parties] had agreed on a zero percent interest rate in the event of non-payment, they would have done so explicitly and clearly").

{¶112} For instance, to avoid Ohio's automatic statutory prejudgment interest on money that becomes due and payable under an oil and gas lease, the title clause should say the lessee "may withhold royalties without obligation to pay interest" or something to that effect. *Grissoms, LLC v. Antero Resources Corp.*, 2024 WL 2952369, *3 (S.D.Ohio June 11, 2024) (applying this plain language of Noble and Monroe County leases as a valid contractual waiver of the statutory and common law rights to prejudgment interest). *Compare HHS Technology Group*, 707 S.W.3d at 799-800 (granting prejudgment interest where the contract's payment withholding clause and damage clause did not mention interest; rejecting the argument that a separate price clause waived statutory prejudgment interest by disallowing "other additional costs, including but not limited to . . . interest").

{¶113} In an Ohio appellate case, a contractor failed to pay a subcontractor under a contract with a payment withholding clause (applicable if there was defective or questionable work). *Guenther Plumbing & Heating v. B.C. & G. Weithman*, 1995 WL 577831 (3d Dist.). The subcontractor filed a breach of contract action, a jury found the subcontractor was not liable for the defect the contractor had to fix, and the trial court awarded prejudgment interest. The appellate court agreed the subcontractor was permitted to recover prejudgment interest despite the payment withholding clause and the disputed debt. *Id.*

{¶114} The clause allowing Gulfport to withhold the landowners' royalties in the event of an adverse claim against the landowners' title to the oil and gas specifically

recognizes those payments were "otherwise due and payable." Although the lease clause may allow due and payable royalties to be withheld in certain situations, the title clause's use of the word "otherwise" does not redefine the payments into those not due and payable for purposes of statutory prejudgment interest. Accordingly, Gulfport's final assignment of error is overruled.

CONCLUSION

{¶115} Contrary to the first argument set forth by Appellants Gulfport and Capstone, Appellees' action based on deed interpretation and enforcement was not barred by the release clause in the deed transferring the property to Appellees. Contrary to Appellants' next argument, the plain language of the deed excepted only those minerals that were "heretofore conveyed" and did not create a new reservation of all minerals to the grantor (Capstone's predecessor in title). Finally, Appellant Gulfport's prejudgment interest argument is overruled. The title clause allowing payment withholding in the event of an adverse title claim did not counter Appellees' statutory entitlement to interest on the withheld royalties.

{¶116} For the foregoing reasons, the trial court's judgment is affirmed.

Hanni, J., concurs.

Dickey, J., concurs.

Case Nos. 24 JE 0023, 24 JE 0025

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.


## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**